**Richard H. WHITE, Plaintiff, Appellee,**

v.

**NEW HAMPSHIRE DEPARTMENT OF EMPLOYMENT SECURITY et al., Defendants, Appellants.**

No. 79–1536.

United States Court of Appeals, First Circuit.

Argued April 7, 1980.

Decided Aug. 12, 1980.

Michael M. Black, Deerfield, N. H., with whom Edward F. Smith, Concord, N. H., was on brief, for defendants, appellants.

Raymond J. Kelly, Manchester, N. H., with whom Alan Cronheim, Portsmouth, N. H., was on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

New Hampshire Department of Employment Security (NHDES) appeals from the district court's allowance of plaintiff's post-judgment request for attorney's fees and the court's denial of NHDES' subsequent motion to vacate a previously entered consent decree. As we find the fees request to have been filed too late, we reverse the award.

On March 8, 1976 the plaintiff, Richard M. White, commenced a class action in the United States District Court for the District of New Hampshire challenging NHDES' unemployment compensation procedures. White alleged that delays in the administration of New Hampshire's unemployment compensation program affecting certain groups of applicants worked a denial of due process and as well were violative of the so-called "when due" clause of the Social Security Act, 42 U.S.C. § 503(a)(1).[1] The complaint alleged jurisdiction under 28 U.S.C. §§ 1343(3), (4) and 42 U.S.C. § 1983; requested class certification under Fed.R. Civ.P. 23; and sought declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202 and Fed.R.Civ.P. 57. The complaint did not include any request for attorney's fees.

Class certification was obtained on May 11, 1976, with the case proceeding to trial on October 12, 1977. The district court found that NHDES' scheme of administration did indeed violate the "when due" provision of the Social Security Act; the court ordered relief and judgment was entered November 15, 1977. Neither the court's opinion and order nor the judgment made any reference to a possible award of attorney's fees. The judgment was subsequently amended in respects not pertinent to the present appeal, and NHDES, on December 27, 1977, filed a timely notice of appeal.

While its appeal was pending in this court, NHDES requested and received numerous extensions of time for the filing of briefs and designation of an appendix on the ground that the parties were attempting to negotiate a settlement. Finally, on December 11, 1978, upon motion of NHDES, this court ordered the "cause . . remanded to the district court for the purpose of entertaining a consent decree." The consent decree was approved by the district court on January 26, 1979, with judgment entered on that day. Neither the consent decree nor the judgment contained

1. The complaint also raised a pendent state claim alleging violations of R.S.A. 282:5-B(2)(d) which regulates certain aspects of New Hampshire unemployment compensation eligibility determination procedures.

mention of attorney's fees. The district court returned, after request, the appeal bond on February 28, 1979; the various exhibits apparently also were returned on or near that date.

On June 7, 1979, some four and one-half months after the district court's approval of the consent decree and its entry of judgment, plaintiffs moved for an award of attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. NHDES objected to this motion contending: 1) that plaintiffs had, during the "original discussions . . . concerning settlement," indicated that attorney's fees would be waived;[2] 2) that plaintiffs had waited "too long to request attorney's fees . . .;" 3) that an award of fees would be counterproductive as it would penalize the state despite its good faith settlement efforts; and 4) that plaintiffs were not, under the terms of the consent decree, truly the "prevailing party."

A hearing on the fee request was held, and on August 30, 1979 the district court entered an order granting a fee award in an amount in excess of $16,000. Shortly thereafter, on September 13, 1979, NHDES, over objection, moved to vacate the consent decree contending that "Plaintiff's Motion for Attorney's Fees which was filed almost six months after the entry of the Consent Decree caught [NHDES] by surprise, as prior to this time, [NHDES] had no notice that attorney's fees would be requested and certainly had no notice at all as to the amount of attorney's fees that would be requested." The district court, after hearing, in a terse order of October 1, 1979, denied the motion to vacate. NHDES had previously filed on September 28, 1979 a notice of appeal of the district court's award of fees, and on October 30, 1979 it filed a similar notice concern-

ing the court's adverse ruling on its motion to vacate. The appeals were consolidated by this court's order of November 6, 1979.

### I.

We dispose of this appeal focusing solely on the question of the timeliness of plaintiff's motion for fees. As we set aside the award because the request was untimely, we do not consider NHDES' alternative contention that, in light of the unexpected award, it should be allowed to withdraw its consent and that the judgment entered pursuant to such consent should therefore be vacated. We hold that a fees award under 42 U.S.C. § 1988 is a matter to be raised and determined prior to entry of final judgment, and that, at the latest, a fees request may be presented after judgment only within such time limits as apply to an appropriate motion to reopen the judgment. Here the proper post-judgment motion was one to alter or amend judgment under Fed. R.Civ.P. 59(e); such a motion must, however, be served within 10 days after entry of judgment.[3] Since the present fees request was filed long after expiration of the 10 day period, and since Fed.R.Civ.P. 6(b) prohibits a court from extending the 10 day period, the lower court was without authority to entertain plaintiff's fees request.

Before proceeding to amplify these views we briefly consider plaintiff's threshold argument that since NHDES did not specifically raise the Rule 59(e) argument in the lower court, it is precluded from doing so now. *See Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir. 1979). The short answer to this objection is that Rule 6(b)'s proscription against the enlargement of the time for serving motions under Rule 59(e) is

---

2. In the fees hearing before the district court, the parties presented different versions of talks they had had concerning attorney's fees prior to their approval of the consent decree which, as already mentioned, was silent on the subject. Plaintiffs contended that they had expected the fees issue to be resolved through negotiation following the entry of judgment while NHDES basically represented that it had expected that the issue of fees would not be

pursued. The district court in its opinion awarding fees concluded that attempts to resolve the fees matter at the time of entry of the consent decree "proved nugatory."

3. Rule 59(e) provides in its entirety.
"Motion to Alter or Amend a Judgment. A Motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."

"mandatory and jurisdictional." *Lapiczak v. Zaist,* 451 F.2d 79, 80 (2d Cir. 1971); *see United States v. Robinson,* 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960). Since we hold that a section 1988 fees motion must be made in time to be incorporated in the final judgment, the 10 day period prescribed by Rule 59(e) was in these circumstances the movant's last shot at achieving this result. The district court was thus without jurisdiction over the later application, and the matter of that lack of jurisdiction properly may be first raised at any stage of the proceedings, including the present appeal. *See, e. g.,* Fed.R.Civ.P. 12(b)(3).

## II.

Coming to the merits of the timeliness question, our view of the procedural rules applicable to a section 1988 fees request is essentially that set out by Judge Warriner of the Eastern District of Virginia in a comprehensive opinion in *Hirschkop v. Snead,* 475 F.Supp. 59 (E.D.Va.1979). Judge Warriner concluded that "the weight of authority favors the proposition that a motion for attorney's fees under § 1988 must be made within 10 days of entry of final judgment under Rule 59(e)." 475 F.Supp. at 62. The court, in the course of concluding that a final judgment had in fact been entered, rejected the argument that section 1988 fees should be treated as an item of costs governed by Fed.R.Civ.P. 54 and 58, which permit the taxing of costs, without express limit of time, after entry of judgment. The court also rejected the alternative argument that section 1988 fees were somehow so "collateral" to the main litigation as to be eligible for treatment in isolation from the judgment therein.

When the present fees award was appealed, no circuit court had yet spoken on the timeliness issue considered in *Hirschkop,* although there existed a fair amount of circuit and district court authority on the timeliness of motions for attorney's fees made in contexts other than section 1988.[4] Most, although not all, of this authority pointed in the direction taken by the district court in *Hirschkop.* The first decision by a circuit court discussing the timeliness of a section 1988 fee request was handed down soon after appellate argument in the present case; this was the Fifth Circuit's decision in *Knighton v. Watkins,* 616 F.2d 795 (5th Cir. 1980), holding, contrary to *Hirschkop,* that attorney's fees under section 1988 were "costs" within Fed.R.Civ.P. 54(b) and 58. As Rule 58 specifically provides that "Entry of judgment shall not be delayed for the taxing of costs," and neither Rule 54(b) nor 58 purports to prescribe

---

**4.** *E. g., Fase v. Seafarers Welfare & Pension Plan,* 79 F.R.D. 363 (E.D.N.Y.1978) (in action for disability pension benefits, Fed.R.Civ.P. 59(e)'s ten-day time limitation bars successful plaintiff's request for attorney's fees filed more than 30 days after the entry of judgment), aff'd on other grounds, although timeliness issue discussed without resolution, 589 F.2d 112 (2d Cir. 1978); *Stacy v. Williams,* 50 F.R.D. 52 (N.D. Miss.1970) (Rule 59(e)'s ten-day limitation bars request for attorney's fees filed more than two months after entry of final judgment; court concluded that it was bound to apply Rule 59 as the fee request concerned "the granting of new substantive relief") (aff'd on the basis of Rule 59(e), 446 F.2d 1366 (5th Cir. 1971)); *Du-Buit v. Harwell Enterprises, Inc.,* 540 F.2d 690 (4th Cir. 1976) (in patent case, "issue of attorney's fees should have been considered and disposed of either prior to or at the time of the entry of final judgment . . . and not left open pending the outcome of the appeal."); *Hill v. TVA,* 84 F.R.D. 226 (E.D.Tenn.1979) (in action under Endangered Species Act, request for attorney's fees filed some 28 months after the entry of court's "final order" was barred by Rule 59(e)'s ten-day limitation or alternatively by Rule 60(b)'s one-year limitation on motions for relief from judgment); *Laufenberg, Inc. v. Goldblatt Bros.,* 187 F.2d 823 (7th Cir. 1951) (interpreting statute governing award of attorney's fees in patent infringement case to mean "that if an award . . . is to be made . . . the [trial] judge should do so either at the time of the entry of judgment or specifically reserve jurisdiction in such judgment to do so . . ."). *Compare Lichtenstein v. Lichtenstein,* 55 F.R.D. 535 (E.D.Pa.1972) (although acknowledging that Rule 59(e) would bar a motion to amend the judgment to include attorney's fees filed after the Rule's ten-day period had expired, the court instead termed plaintiff's request as one to amend the Bill of Costs and allowed it despite timeliness objection) (rev'd on other grounds, 481 F.2d 682 (3d Cir. 1973), *cert. denied,* 414 U.S. 1144, 84 S.Ct. 895, 39 L.Ed.2d 98 (1974)). *See also* the so-called common fund cases discussed *infra.*

any period after judgment within which costs applications must be filed, the Fifth Circuit, in the absence of any contrary local rule,[5] found no bar to entertaining a fees request filed some two months after the entry of final judgment. Were we to follow the decision in *Knighton*, the present fees request and award would thus likely be timely even though filed some months after entry of final judgment. With all respect, however, we disagree with *Knighton*.

We start from the premise that a final judgment ordinarily signifies the final resolution, subject to appeal, of all claims raised in a lawsuit. *See* Fed.R.Civ.P. 54. New claims may thereafter be advanced and old ones reinstated only pursuant to rules providing, within narrowly defined circumstances, for the reopening of the judgment. *See, e. g.,* Fed.R.Civ.P. 59, 60. If this were not so, appellate tribunals would be constantly vexed by multiple appeals growing out of fragments of the same litigation, and a party could never be sure when his case had ended.[6] It follows that a prevailing party's claim for attorney's fees under section 1988 must be resolved before or in the final judgment unless that claim be regarded as falling within some special exception carved out by rule or practice.

Plaintiff urges two such exceptions upon us in support of the view that their failure to request fees prior to the entry of judgment or to move within 10 days to amend such judgment so as to include a fee award, is not fatal to their subsequent fee application. First plaintiff argues, as the Fifth Circuit held in *Knighton*, that section 1988 fees are properly treated as "costs," and thus specifically exempted from the requirement of resolution prior to the entry of final judgment.[7] This position is not without some support in the language of the Fees Act. The Act grants to the district court, in various specified actions, the discretion to "allow the prevailing party, other than the United States, a reasonable attorney's fee *as part of the costs.*" 42 U.S.C. § 1988 (emphasis added). Focusing

5. Although there is no local rule in the District of New Hampshire providing that motions for costs be filed within some specified time after entry of judgment, a number of district courts have adopted such rules. 10 Wright & Miller, Federal Practice and Procedure § 2679 at 240 n. 76.

6. Blackstone adds a bit of historical perspective to the practical considerations underlying the well-settled concept of finality of judgments. He tells how Edward I, "on his return from his French dominions in the seventeenth year of his reign" found it "necessary (or convenient, in order to replenish his exchequer)" to fine rather heavily various judges for "their corruption and other malpractices. . . ." Paramount among these bad habits was the practice of "erasing and altering records," a practice apparently engaged in by "almost all of the king's justices, even the most able and upright." And these punishments were often of a sizeable amount. Sir Ralph Hengham, Chief Justice of the King's Bench is said to have been fined some 7,000 marks, a rather tidy sum considering that the Chief's annual salary was then only 60 marks. The threat of such punishment was clearly not lost on the bench, for as Blackstone relates: "The severity of which proceedings seems to have alarmed the succeeding judges, that through a fear of being said to do wrong, they hesitated at doing what was right. As it was hazardous to alter a record duly made up, even from compassionate motives

. . . they resolved not to touch a record any more; but held that even palpable errors, when enrolled and the term at an end, were too sacred to be rectified or called in question: and, because Britton had forbidden all criminal and clandestine alterations, to make a record speak a falsity, they conceived that they might not judicially and publicly amend it, to make it agreeable to truth. . . ." 3 Blackstone Commentaries, 409–410.

Thus from Edward's rather severe attempt to fill his coffers and the already traditional view of the solemnity of all judgments "came the ancient common law rule that a judgment, once enrolled on parchment, was unalterable even for the correction of a manifest mistake." *La Vale Plaza, Inc. v. R. S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir. 1967). Today, rules such as Fed.R.Civ.P. 54, 59 and 60 ease the situation somewhat, but the difficulties that would ensue were individual cases not to be organized around the principle of single and final judgment keep such escape valves the exception, not the rule.

7. Notwithstanding plaintiff's reliance on the concept that attorney's fees are taxable as Rule 54 costs, plaintiff's motion for an award of attorney's fees was not made as part of a general application for costs; apparently, in fact, no such request for costs has yet been filed by plaintiff.

upon this language, the Fifth Circuit concluded in *Knighton* that, "Because Congress directed that attorney's fees under section 1988 be treated as costs, there is no jurisdictional time limit on the filing of a motion seeking such fees." *Knighton v. Watkins,* 616 F.2d 795, 798 (5th Cir. 1980) (footnote omitted). We are unpersuaded, however, by this analysis.[8]

We do not find it clear that Congress, by generally describing attorney's fees under section 1988 as a part of the costs, meant thereby to include those fees within the specific type of costs recoverable after judgment under Fed.R.Civ.P. 54. Rule 54(d), referring to the awarding of costs, provides, in part, that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . . Costs may be taxed by the clerk on one day's notice." 28 U.S.C. § 1920 adds a bit of flesh to the bones of Rule 54(d) by providing:

"A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

Examination of the above language strongly indicates that the costs allowed as of course by Rule 54(d) and detailed in 28 U.S.C. § 1920 are items of a nature very different from the discretionary attorney's fees allowed under the Fees Act. Rule 54(d) envisages the former as capable of being taxed by the clerk on one day's notice. In keeping with this idea the costs listed in section 1920 are almost all capable of routine computation, and the one arguable exception, item (6), is peculiarly within the court's own authority to establish, without input from the parties and with little likelihood of engendering controversy. Not so the discretionary award of attorney's fees under section 1988. To calculate such an award, indeed, even to determine whether one should be made at all, the district court must evaluate possibly a dozen diverse factors, *see King v. Greenblatt,* 560 F.2d 1024, 1026 (1st Cir. 1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), including such factors as the novelty and difficulty of the legal questions presented and the skill required to perform the particular services provided. Moreover, in determining the propriety and size of a fee award, the district court is generally assisted by submissions from the parties and frequently finds it necessary, as was true here, to hold a hearing on the matter. Appeals often ensue—leading to the prospect of separate fees appeals if final judgment rules are disregarded—as the sizeable sums involved may impose a very substan-

---

8. Apart from the argument based on "costs," *see, infra,* the Fifth Circuit in *Knighton* pointed to little in support of its conclusion that motions for section 1988 fees may be filed after judgment has been entered and the 10 day period for amending or altering such judgment has expired. *See* Fed.R.Civ.P. 59(e). To say, as did that court, that a motion for fees does not change the judgment but merely seeks what is due because of the judgment is to beg the question to be decided. Nor are the cases cited by the Fifth Circuit in *Knighton* compelling. *National Council of Community Mental* *Health Centers, Inc. v. Weinberger,* 387 F.Supp. 991, 994–95 n. 3 (D.D.C.1974), discussed the timeliness of a request for fees in the context of the so-called common fund situation, a situation which has long been distinguished from cases like the present. *See infra.* And, *Environmental Defense Fund, Inc. v. Froehlke,* 368 F.Supp. 231, 251–55 (W.D.Mo.1973), while providing thorough background information on the history of and procedure for the awarding of costs, did not discuss the question of attorney's fees generally, let alone the specific question of the timeliness of a request for such.

tial and bitterly disputed liability upon the losing party. Hence while such fees, like routine costs, are, to be sure, somewhat ancillary to the main dispute, they are fully capable of engendering a major controverted claim which will be closely intertwined with the merits of the primary dispute and which will require careful factual and legal analysis by the court. The considerations making it feasible to treat routine costs as an exception to final judgment rules—the ease of their computation and the fact that they almost never give rise to dispute or appeal—plainly do not apply to section 1988 attorney's fees. Thus we do not believe that a section 1988 fees award can be likened to the costs assessed routinely after entry of judgment. The potential amount of the fees award, the varied factors which must be considered by the court in reaching the fees decision, and the crucial role of the judge and parties in reaching that final determination render the fees/costs comparison strained at best.

True, as plaintiff points out, the Supreme Court itself, in *Hutto v. Finney*, 437 U.S. 678; 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), citing the language of the Fees Act, characterized attorney's fees under section 1988 as being a part of "costs." But this statement was made in the context of rejecting the contention that the eleventh amendment stood as a bar to the awarding of fees against a state. The Court's general reasoning and ultimate conclusion that "Costs have traditionally been awarded without regard for the State's Eleventh Amendment immunity," *id.* at 695, 98 S.Ct. at 2568, hardly seems dispositive of the question whether section 1988 attorney's fees fall within the specific types of taxable costs contemplated by Fed.R.Civ.P. 54(d) and 58. *Cf. Roadway Express, Inc. v. Piper*, —— U.S. ——, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (costs that federal courts may impose on lawyers who unreasonably and vexatiously extend court proceedings do not include attorneys' fees under section 1988).

Plaintiff advances a second and alternative argument in support of his position that the resolution of a section 1988 fee request should be treated differently from the general run of controverted issues resolved within the contours of a court's final judgment. He suggests that his "claim for attorney's fees is a collateral and independent claim," and thus not controlled by the time limits which relate solely to the entry of judgment in the central but supposedly separate claim on the merits. Plaintiff would have us view the fee matter as a separate mini-lawsuit to be commenced, argued and resolved at some point in time following the entry of judgment in the central litigation. While plaintiff argues that this position finds support in the cases, the cited decisions involved circumstances of a different sort than those presented here. As discussed by Judge Friendly in *Fase v. Seafarers Welfare & Pension Plan*, 589 F.2d 112, 114–15 n. 3 (2d Cir. 1978), "cases where attorneys seek, long after judgment, to be paid out of a fund created by the judgment, *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 [, 5 S.Ct. 387, 28 L.Ed. 915] (1885), or earmarked assets whose distribution would be governed by the legal principle which plaintiff's attorney had established, *Sprague v. Ticonic National Bank*, 307 U.S. 161 [, 59 S.Ct. 777, 83 L.Ed. 1184] (1939) . . . present a lesser problem than those where allowance of a fee will result in an addition to the amount awarded by judgment. Something may also turn on whether . . . the lawyer is asserting a right of his own . . .; in the latter type of case it is easier to characterize the proceedings as 'collateral' or 'independent.'" Here we have neither the so-called common fund situation, *see also National Council of Community Mental Health Centers, Inc. v. Weinberger*, 387 F.Supp. 991 (D.D.C.1974), *rev'd on other grounds*, 546 F.2d 1003 (D.C.Cir.1976), *cert. denied*, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977), nor an attorney seeking fees by asserting a right of his own rather than one of his client. *See* 42 U.S.C. § 1988 (award of attorney's fees goes to "prevailing party," rather than attorney). *But cf. Memphis Sheraton Corp. v. Kirkley*, 614 F.2d 131 (6th Cir. 1980).

Moreover, plaintiff's contention that a section 1988 fee request is an independent claim that can be maintained after judgment runs squarely counter to the language of the Fees Act itself, which provides that *"In any action or proceeding* to enforce [appropriate civil rights statutes]" the court may, in its discretion, allow reasonable attorney's fees to the prevailing party. (Emphasis added). This language strongly indicates that the fee issue is one properly viewed as belonging within the main body of the already commenced civil rights action.

We thus remain unpersuaded that a section 1988 fees request falls within some recognized exception—be it "costs" or a theory of independent claim—to the general rule requiring the resolution of controverted issues by a trial judge within the overall framework of the central litigation and the final judgment entered therein. Rather, our review of the relevant authority, *see, e. g.,* note 4, *supra,* including the Fees Act and the wellreasoned *Hirschkop* decision previously discussed, persuades us that the timeliness of a post-judgment motion for attorney's fees made pursuant to section 1988 is properly governed by Rule 59(e)'s ten day limitation.[9] A request for a discretionary award of fees under section 1988 is intimately tied to the questions raised in, and overall merits of, the prevailing party's case, *see King v. Greenblatt,* 560 F.2d at 1026–27; it is a request, moreover, that may lead to a sizeable and unpredictable addition to the burdens shouldered by the losing party, *see, e. g., Palmigiano v. Garrahy,* 616 F.2d 598 (1st Cir. 1980) (affirming fee award of $115,483.75); *Lamphere v. Brown University,* 610 F.2d 46 (1st Cir. 1979) (award well in excess of $200,-000). The ultimate award of fees is, in our view, clearly a part of the overall relief sought and granted during the course of a particular civil rights action. Not only will it often be more economical of a court's time to resolve fees requests prior to entry of judgment rather than having them sur-

face for the first time weeks or even months thereafter, but so doing ensures certainty as to the scope and finality of the judgment, *see Fase v. Seafarers Welfare & Pension Plan,* 79 F.R.D. 363, 367 (E.D.N.Y. 1978), and at the same time reflects and re-enforces the strong policy against piecemeal appeals. *Wright v. Jackson,* 522 F.2d 955, 957 (4th Cir. 1975) (Aldrich, J.).

Indeed, the present case highlights many of the problems which would likely be frequently encountered were we not to endorse the position that Rule 59(e)'s ten-day limitation marks, in terms of time, the outer limits of a fees request. The protraction here of a dispute previously, to all appearances, resolved is clearly not an occurrence to be encouraged. A court, having set its hand to the plow on the central litigation, should complete the furrow all at one time. The present post-judgment motion for an award, coming as it did nearly five months after judgment, was in our view too late.

We add that we see our decision as imposing no great hardship on civil rights litigants or courts. Doubtless persons such as the present litigants who have acted prior to this decision have greater cause for complaint than will those who follow them, but most fees litigants who have previously come to our attention have taken pains to request fees prior to or within ten days following entry of judgment, *see, e. g., David v. Travisono,* 621 F.2d 464, at 467 n. 2 (1st Cir. 1980); the state of the law has surely been such as to suggest the wisdom of that course.

Our decision will not prevent a district court from granting prompt and effective relief in a civil rights case. Entry of judgment which determines all matters except fees and includes an express reservation of the issue of fees, is a possible option when time is of the essence. Such a judgment might raise a question of finality should an appeal immediately be taken, *see Memphis Sheraton Corp. v. Kirkley,* 614 F.2d 131 (6th

---

**9.** We need not now address the question whether and in what circumstances the time limits established in other Rules permitting the

opening of judgments might apply to a section 1988 fees request.

Cir. 1980), but even if non-appealable because still interlocutory the judgment would otherwise be effective. And the district court has the means to ensure, when necessary, the appealability of such a judgment. Under Fed.R.Civ.P. 54(b) the court may direct the entry of final judgment forthwith upon fewer than all claims presented upon determining expressly that there is no just reason for delay. Thus under our present decision the district court retains ample flexibility. Our decision merely ensures that fees, like all other matters in controversy, will be covered by a unified judgment which, absent express action under Rule 54(b), controls the entire case.

Nor in a consent decree context do we see anything wrong with requiring the parties to face up to the issue of fees in their settlement negotiations. *Cf. Regalado v. Johnson,* 79 F.R.D. 447 (N.D.Ill.1978) (expressing concern over the propriety of injecting the issue of fees into settlement negotiations). Failure to confront the fees issue merely muddies the waters, as the present case well demonstrates. We of course do not suggest that an attorney in the course of settlement negotiations need, or in every case properly may, hold out, against his client's best interests, for a specific fees award to be included in the consent decree. If agreement as to fees is not easily accomplished, the parties may provide for submission of the entire question of fees to the court; further, they may, of course, decide to waive fees altogether. But there is nothing whatever to be encouraged in the path followed here—leaving the matter of fees unmentioned in the settlement and then raising it unilaterally several months later under circumstances that cast a shadow upon the settlement itself. Where Congress has spoken on the subject of fees, there can be no virtue in pretending the issue does not exist.

As plaintiff's fees claim was filed out of time, it should not have been entertained, and we hold the district court was without jurisdiction to make any award.

*The fees award entered by the district court is vacated.*