Jeanne BACON, individually and on behalf of her minor children, Robert Bacon and Ife Bacon, and on behalf of all other persons similarly situated, Plaintiffs-Appellants-Cross-Appellees,

and

Freddie Mae Goodwine, Linda Selders and Gertrude Parrish, Plaintiffs-Intervenors-Appellants-Cross-Appellees,

v.

Philip L. TOIA, individually and as Commissioner of the Department of Social Services of the State of New York, Defendant-Appellee-Cross-Appellant,

Charles W. Bates, individually and as Commissioner of the Westchester County Department of Social Services, Defendant.

Nos. 491, 602, Dockets 80–7725, 80–7745.

United States Court of Appeals, Second Circuit.

Argued Dec. 18, 1980.

Decided May 4, 1981.

Last Brief Feb. 4, 1981.

Martin A. Schwartz, Westchester Legal Services, Inc., White Plains, N.Y. (Eileen Kaufman, Westchester Legal Services, Inc., White Plains, N.Y., Constance Carden, Legal Aid Society, New York City, of counsel), for plaintiffs-appellants-cross-appellees.

Robert S. Hammer, Asst. Atty. Gen. of the State of New York, New York City (Robert Abrams, Atty. Gen. of the State of New York, George D. Zuckerman, Asst. Sol. Gen., New York City, of counsel), for defendant-appellee-cross-appellant.

Randolph W. Gaines, Chief of Litigation, Richard Wills Hubbard, Atty., Dept. of Health and Human Services, Baltimore, Md. (Alice Daniel, Asst. Atty. Gen., Washington, D.C., John S. Martin, U.S. Atty., for the S.D. N.Y., New York City, of counsel), for Secretary of Health and Human Services as amicus curiae.

Before FEINBERG, Chief Judge, KEARSE, Circuit Judge, and EDELSTEIN, District Judge.*

FEINBERG, Chief Judge:

This class action for declaratory and injunctive relief under 42 U.S.C. § 1983 challenges the constitutionality of certain amendments adopted in 1977 to section 350–j of the New York Social Services Law,[1] the provision governing the state's program of emergency assistance to needy families with children.[2] We conclude that the statute, as amended, is not invalid under the Supremacy Clause of the Constitution, but we hold that the two particular provisions raised in this appeal—one denying cash emergency assistance to persons eligible for or receiving Aid to Families with Dependent Children (AFDC)[3] and the other denying all forms of emergency assistance in cases of loss or theft of a public assistance grant—deny the members of the plaintiff class of AFDC recipients the equal protection of the laws guaranteed by the Fourteenth Amendment. Accordingly, we affirm in part and reverse in part the judgment of the district court, and enjoin enforcement of the constitutionally defective provisions.

I

The named original and intervening plaintiffs, recipients of benefits under New York's AFDC program, brought this action in 1977 to enjoin enforcement of certain amendments adopted in that year to the state's emergency assistance program, the effect of which was to limit and in some circumstances to deny such assistance to AFDC recipients. Plaintiffs initially moved for summary judgment in the United States District Court for the Southern District of New York, before Judge Lee P. Gagliardi. In September 1977, in an opinion reported at 437 F.Supp. 1371, Judge Gagliardi granted the motion on the ground that the amendments impermissibly narrowed the eligibility standards for emergency assistance imposed on the states by federal law—specifically, section 406(e) of the Social Security Act, 42 U.S.C. § 606(e)—and was

---

* Honorable David N. Edelstein, Judge of the United States District Court for the Southern District of New York, sitting by designation.

1. As amended by 1977 N.Y. Laws ch. 77, § 10, the portions of the statute at issue here read:

    2. For purposes of this section, the term "emergency assistance" means aid, care and services authorized during a period not in excess of thirty days in any twelve month period to meet the emergency needs of a child of the household in which he is living, in the following circumstances:

    .    .    .    .    .

    (c) in cases of applications for grants of cash assistance, such child or such household is not categorically eligible for or receiving aid to dependent children; and

    .    .    .    .    .

    (e) such occurrence or situation could not have been foreseen by the applicant, was not under his control and, in the case of a person receiving public assistance, did not result from the loss, theft or mismanagement of a regular public assistance grant; and

    (f) the emergency grant being applied for will not replace or duplicate a public assistance grant already made under section one hundred thirty-one-a of this chapter.

    3. Emergency assistance to needy families with children shall be provided to the extent of items of need and services set forth in sections one hundred thirty-one and one hundred thirty-one-a of this chapter .... Such emergency assistance, but not including cash grants, may be furnished to a family eligible for aid to dependent children only in the form of emergency services ....

2. The emergency assistance program is operated by the state but, so long as federal requirements are met, receives substantial funding under provisions of Title IV–A of the Social Security Act added in 1968. See 42 U.S.C. §§ 603(a)(5), 606(e); 45 C.F.R. § 233.120(b)(2) (1980). For a more detailed account of the purposes and operation of the program, see Judge Gagliardi's opinion in this case, *Bacon v. Toia*, 493 F.Supp. 865, 868–69 (S.D.N.Y.1980).

3. Like the emergency assistance program, AFDC is administered by the state under the authority of Title IV–A of the Social Security Act, 42 U.S.C. § 601 et seq. The general purpose of the program, inaugurated as part of the original 1935 Act, is to "encourag[e] the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State," to needy children and their parents and relatives. 42 U.S.C. § 601.

thus invalid under the Supremacy Clause. We affirmed in an unpublished memorandum order, accepting the analysis of the district court's opinion. 580 F.2d 1044 (2d Cir. 1978). Shortly thereafter, however, the Supreme Court, in *Quern v. Mandley*, 436 U.S. 725, 98 S.Ct. 2068, 56 L.Ed.2d 658 (1978), held that section 406(e) did not preclude the states from setting eligibility standards for emergency assistance more narrowly than for AFDC benefits. Defendants moved for rehearing in this court in light of *Quern*; granting their motion, we recalled our order of affirmance, vacated the judgment of the district court, and remanded the action for further consideration and for resolution of any remaining issues, if necessary.

On remand, the district court granted defendants' motion for summary judgment on the Supremacy Clause claim in an opinion dated January 30, 1979, reversing its prior decision and concluding that the New York statute as amended was valid under the Supreme Court's "definitive statutory interpretation" of section 406(e) of the Social Security Act. At the same time, the court gave the parties leave to file further briefs addressed to the constitutional issues.

Finally, in June 1980, in an opinion reported at 493 F.Supp. 865, Judge Gagliardi held that one of the challenged amendments, the provision denying emergency assistance in the form of cash to persons receiving or eligible for AFDC assistance (the "no-cash provision"),[4] deprived plaintiffs of the equal protection of the laws. The court upheld, however, the other amended provisions cited in the complaint, one barring emergency assistance in any case of loss, theft, or mismanagement of a regular public assistance grant (including

AFDC) (the "loss-or-theft provision")[5] and the second prohibiting emergency assistance to replace or duplicate certain recurring public assistance grants (the "duplication provision").[6] In the final judgment entered pursuant to the court's opinion, Judge Gagliardi reserved the issue of attorneys' fees, costs, and disbursements for determination on motions to be made within three months after completion of all appellate proceedings in this case.

In this court, plaintiffs appeal from the district court's ruling on the Supremacy Clause claim,[7] and from that part of the judgment upholding the loss-or-theft provision. They do not attack the ruling with respect to the duplication provision. Defendant Commissioner of the Department of Social Services of the State of New York (the "Commissioner") cross-appeals from the part of the judgment striking down the no-cash provision and from the order reserving the issue of attorneys' fees.

II

We turn first to plaintiffs' claim that the district court erred in finding no conflict under the Supremacy Clause between the amended New York statute and the emergency assistance eligibility standards set by the federal Social Security Act. Plaintiffs' essential argument is that the Supreme Court's decision in *Quern v. Mandley*, supra, does not control this case; they point instead to our own earlier decision in *Lynch v. Philbrook*, 550 F.2d 793 (2d Cir. 1977). In *Lynch*, we struck down a Vermont statute that sharply limited AFDC recipients' entitlement to emergency assistance,[8] reasoning that the emergency assistance program as defined in the Social Security Act "was designed to cover, at a minimum, AFDC

---

4. N.Y.Soc.Serv.L. § 350–j(2)(c), note 1 supra. The limitation of aid to "services" is reiterated in § 350–j(3).

5. N.Y.Soc.Serv.L. § 350–j(2)(e), note 1 supra. See also note 11 infra.

6. N.Y.Soc.Serv.L. § 350–j(2)(f), note 1 supra.

7. Following oral argument of this appeal, we requested the Secretary of Health and Human Services to submit a brief as amicus curiae

addressed to this issue. The Secretary's brief, which has been helpful to the court, was filed in January 1981.

8. The statute required that AFDC recipients show an "emergency need" attributable to one of four specified causes; other qualified persons had only to show the existence of an "emergency need." See 550 F.2d at 795.

recipients," id. at 796, and that while the program was "only an optional component of AFDC, once Vermont decided to participate in it, it was bound to follow the eligibility conditions established by federal law." Id. at 795. Those conditions, set out in section 406(e) of the federal statute, we treated as a "mandate." Id.

Though the Supreme Court in *Quern* made no specific reference to *Lynch*,[9] it held squarely that section 406(e) does not "impose[ ] mandatory eligibility standards on States that elect to participate in the [emergency assistance] program"; rather, it "defines the *permissible* scope" of such programs "for purposes of federal funding." 436 U.S. at 747, 98 S.Ct. at 2080 (emphasis in original). The statute thus does not preclude the states from establishing more restrictive standards of eligibility; as the Court observed, "the very breadth of the potential reach of [emergency assistance]—to virtually any family with needy children of a certain age that faces a risk of destitution—argues against the inference that Congress intended to require participating States to extend aid to *all* who were potentially eligible under § 406(e)." Id. at 745–46, 98 S.Ct. at 2079–80 (emphasis in original).

Plaintiffs contend that the issue in this case and in *Lynch* is not, as it was in *Quern*, whether states may define eligibility for emergency assistance more stringently than does section 406(e), but rather "whether [section 406(e)] allows the states to run an Emergency Assistance program . . . that treats AFDC eligible persons worse than other persons." In this connection, they point to our express recognition in *Lynch* that we did not there "face . . . the issue of how freely a state can define what constitutes an emergency for which [emergency assistance] will be paid," 550 F.2d at 797, the issue with which *Quern* was essentially concerned. In *Lynch*, we held "only that AFDC recipients need show no more pressing emergency than those not on AFDC." Id. This holding, plaintiffs argue, is still

valid after *Quern* and requires that the statutory provisions challenged here be struck down under the Supremacy Clause. Indeed, they point out, the provisions before us now go even further than those at issue in *Lynch*, since they do not even permit AFDC recipients to obtain emergency assistance by meeting a heavier burden—they are simply cut off altogether in the specified circumstances.

Plaintiffs' distinction of *Quern* has a certain appeal, but we find it ultimately unpersuasive. To apply *Lynch* at this stage, we would have to ignore the clear import of the Court's reasoning in *Quern* : that Congress intended to leave to the states substantial flexibility in determining the scope of emergency assistance programs suitable under local conditions. Beyond setting outside limits on eligibility for programs that qualify for federal funding, Congress provided no statutory basis for invalidating a state's decision in this area. Our view that this is the proper reading of *Quern* is strengthened by the Court's specific acknowledgement in that case, with no suggestion of disapproval, that some states (like New York) "*exclude* AFDC recipients if the emergency need is one theoretically covered by the basic assistance grant . . . ." 436 U.S. at 740 n.16, 98 S.Ct. at 2077 n.16 (emphasis in original).

We conclude, then, that *Quern* bars plaintiffs' challenge under the Supremacy Clause based on an allegation of conflict with section 406(e) of the Social Security Act. In so doing, we do not mean to say that *Quern* licenses any form of state classification for emergency assistance; state programs of course remain subject to review, as we discuss below, on constitutional grounds.

A somewhat different Supremacy Clause argument appears in the amicus brief of the Secretary of Health and Human Services, requiring separate analysis. The Secretary argues that *Quern* is not dispositive because it dealt only with section 406(e); here, the Secretary asserts, the conflict arises instead

---

9. Plaintiffs note in this connection that *Lynch* was cited in the Supreme Court briefs of both sides in *Quern*, indicating that the Court was certainly not unaware of its existence.

between the amended New York statute and section 402(a)(5) of the Social Security Act, 42 U.S.C. § 602(a)(5). This section provides that "[a] State plan for aid and services to needy families with children [i. e., an emergency assistance program] must . . . provide such methods of administration . . . as are found by the Secretary to be necessary for the proper and efficient operation of the plan." Acting pursuant to the rulemaking authority delegated by section 1102 of the Act, 42 U.S.C. § 1302, the Secretary has promulgated regulations defining such "methods of administration" and setting forth other requirements for state emergency assistance plans. One of these regulations, codified at 45 C.F.R. § 233.-10(a)(1), provides in part:

> The groups selected for inclusion in the plan and the eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups in the light of the provisions and purposes of the public assistance titles of the Social Security Act.

The Secretary takes the position that this regulation "creat[es] a permissible limit upon the discretion otherwise allowed the States by § 406(e) of the Act because the regulation is a legislative-type rule, itself having the force of law." As such, the Secretary argues, the regulation is entitled, under *Batterton v. Francis*, 432 U.S. 416, 425–26, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977), to "more than mere deference or weight." Since the provisions of the New York statute at issue here discriminate against AFDC recipients "without relation to the purposes of the [emergency assistance] program," the Secretary would have us find them invalid under the Supremacy Clause by virtue of their conflict with the Secretary's regulation.

Our initial difficulty with this argument, as with the argument pressed by plaintiffs, is that it seeks to evade the thrust of *Quern* that Congress intended to leave eligibility determinations to the states. Indeed, the argument requires a conclusion that what Congress gave to the states in section 406(e) it reclaimed in section 402(a)(5) by leaving the Secretary a residual authority to evaluate the states' decisions for "arbitrariness," "unreasonableness," or "inequity." In view of the reasoning in *Quern*, we would not feel justified in accepting that view. We conclude, therefore, that in authorizing the Secretary to prescribe "methods of administration" for state emergency assistance programs, Congress did not confer an administrative power to review eligibility determinations that do not conflict with section 406(e). To the extent that the Secretary's regulation asserts such power, it exceeds the scope of authority delegated by the statute and is thus not entitled to judicial deference. See *Batterton v. Francis*, supra, 432 U.S. at 426, 97 S.Ct. at 2406.[10]

In sum, we affirm the district court's decision on the Supremacy Clause claim and reject the Secretary's contention that section 402(a)(5) provides an alternative basis for such an argument. Having considered these statutory issues, we may now turn to the constitutional arguments raised by both sides. See *New York City Transit Authority v. Beazer*, 440 U.S. 568, 582–83, 99 S.Ct. 1355, 1363–65, 59 L.Ed.2d 587 (1979).

## III

The constitutional issues raised in this case concern the validity of the classifications drawn by the New York legislature in the no-cash provision and the loss-or-

---

10. The Secretary argues that the language of section 402(a)(5) is "hardly different from" that of section 407(a), the provision at issue in *Batterton v. Francis*. We disagree. Section 407(a) delegated authority to the Secretary to prescribe standards for determining what constitutes "unemployment," and in so doing reflected a congressional decision to "entrust[ ] to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term." 432 U.S. at 425, 97 S.Ct. at 2405. The language of section 402(a)(5), on the other hand, contemplates no such substantive authority on the Secretary's part for the definition of statutory terms; it refers instead to the promulgation of administrative regulations designed to promote "proper and efficient operation" of the AFDC program.

theft provision [11] of the emergency assistance statute. We agree with the district court—and the parties—that the standards applicable to this inquiry are those set forth in *Dandridge v. Williams*, 397 U.S. 471, 485–87, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970), and decisions that have followed it, such as *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). These decisions recognize that in the area of social welfare legislation states may draw lines, even imperfect ones, provided they rest on a rational basis and are free of invidious discrimination. As the Court stated in *Dandridge*, supra:

> If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."

397 U.S. at 485, 90 S.Ct. at 1161 (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)).

### A. The No-Cash Provision.

We turn first to the Commissioner's appeal from the district court's holding that sections 350–j(2)(c) and (3) was unconstitutional in denying emergency assistance in the form of cash (but not services) to persons receiving or eligible for AFDC benefits. Judge Gagliardi based this conclusion on his finding that the provision "arbitrarily denies emergency aid in the form of cash to one category of potential beneficiaries of the statute without any demonstration that the resulting classification advances a legitimate, articulated state purpose."

The Commissioner here makes no attempt to show that a valid purpose does underlie this provision, arguing instead that the district court erred in finding that it results in different treatment for AFDC recipients. In support of this argument, the Commissioner cites an affidavit, dated October 31, 1978, by the Director of the Income Support Unit of the Division of Income Maintenance of the New York State Department of Social Services. This affidavit asserts that the no-cash provision, contrary to the appearance of its plain language, "does *not* discriminate against [AFDC] recipients" because:

> the *only* occasions in which emergency assistance in the form of cash would be provided to a Home Relief recipient [New York's "residual public assistance program," see 493 F.Supp. at 870 n.7] would be for those situations in which an [AFDC] recipient would be eligible for a cash grant as part of the [AFDC] program. Examples of these situations are set forth in Section 131–a of the Social Services Law such as replacement of furniture and clothing as a result of fire, flood or other like catastrophe. Since cash assistance is provided to *all* public assistance recipients in identical circumstances, there is no discrimination because the source of the cash assistance program is irrelevant to the recipient.

(Emphasis in original.) Judge Gagliardi did not refer to this portion of the affidavit in his opinion, but he did consider the significance of a directive from the state's Department of Social Services issued shortly after the amended statute took effect and making essentially the same point.[12] See 493

---

11. *The statute also prohibits emergency assistance to replace "mismanage[d]" public assistance grants, see N.Y.Soc.Serv.L. § 350–j(2)(e), note 1 supra. The district court ruled that plaintiffs in this action lacked standing to challenge this part of the statute, see 437 F.Supp. at 1385 n.12, and plaintiffs do not contest that ruling in this court. Accordingly, we do not reach the constitutionality of this limitation.*

12. The record includes two other documents along similar lines. One is a "Program Guide Transmittal" issued by the Westchester County Department of Social Services on August 9, 1977, explaining to department personnel the changes made by the 1977 amendments. Under the heading "Eligibility Criteria," the transmittal advises:

> FAMILIES ELIGIBLE FOR ADC [AFDC] ARE INELIGIBLE FOR DIRECT OR INDIRECT CASH GRANTS IN THE EAF [EMERGENCY ASSISTANCE] CATEGORY SINCE SPECIFIC EMERGENCY NEEDS CAN BE MET THROUGH THE REGULAR ADC PROGRAM.

Like the directive cited by Judge Gagliardi, however, the transmittal offers no further ex-

F.Supp. at 872–73. He concluded, however, that the interpretation of the statute given in the directive was without any substantiating support in the record and therefore declined to accept it as a satisfactory explanation of the no-cash limitation.

The affidavit pressed on us by the Commissioner suffers from the same absence of apparent support in the record. It appears to be little more than ipse dixit, substantially varying the plain language of the statute. As such, we agree with the district court that it does not constitute an authoritative administrative interpretation warranting judicial deference. Cf. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

Moreover, a review of the statutes and cases interpreting them indicates to us that the interpretation given in the affidavit is simply not correct. It is true, as the affidavit asserts, that N.Y.Soc.Serv.L. § 131–a(6) permits extraordinary relief to AFDC recipients, beyond regular monthly benefits, in certain defined circumstances—circumstances in which persons not receiving monthly AFDC benefits would be able to seek relief through the emergency assistance program. See id. § 350–j(3). But we cannot accept the contention that the two programs are coterminous. Section 131–a(6), for example, permits grants for replacement of furniture or clothing lost as the result of "fire, flood or other like catastrophe"; it does not permit grants in cases of loss attributable to burglary, see, e. g., *Howard v. Wyman*, 28 N.Y.2d 434, 322 N.Y. S.2d 683, 271 N.E.2d 528 (1971), or public auction following eviction, see, e. g., *Orr v. Shang*, 66 A.D.2d 784, 410 N.Y.S.2d 654 (1978); *Nazario v. New York Commissioner of Social Services*, 37 A.D.2d 630, 323 N.Y. S.2d 618 (1971). Emergency assistance grants are not so limited, see *Orr v. Shang*, supra, 66 A.D.2d at 784, 410 N.Y.S.2d 654.

Furthermore, section 131–a(6) makes no provision for grants to meet food and other immediate living expenses—expenses for which grants can be made under the emergency assistance program.

■ On this record, therefore, we conclude that the Commissioner has not made a satisfactory showing that sections 350–j(2)(c) and (3) does not, in fact, discriminate against AFDC recipients. Since the Commissioner has not even attempted to offer a "reasonable basis" for this discrimination, we agree with the district court that the no-cash provision violates the guarantees of the Equal Protection Clause.

### B. *The Loss-or-Theft Provision.*

As amended in 1977, N.Y.Soc.Serv.L. § 350–j(2)(e) prohibits the extension of emergency assistance of any kind to persons receiving public assistance if the emergency arose "from the loss, theft, or mismanagement of a regular public assistance grant." "Public assistance" in New York includes AFDC benefits, together with "home relief, veteran assistance . . ., medical assistance for needy persons, institutional care for adults and child care granted at public expense . . . ." Id. § 2(20). The district court held that this provision rationally served a legitimate state interest—namely, "to prevent duplicate payments to public welfare recipients who might feign the loss or theft of the proceeds of a grant." 493 F.Supp. at 874. The court found further that the state could reasonably conclude that verification of claims of loss or theft would be virtually impossible and, in any event, expensive and time-consuming. In addition, the court found that there were no "viable alternatives" available to the state to protect against spurious claims. Under these circumstances, the court found that the stat-

planation of how the AFDC program meets all the needs otherwise covered by the emergency assistance program.

Also in the record is a document identified by counsel for the Commissioner as a memorandum of the state Division of the Budget, prepared for the legislature in support of the bill

containing the amendments. This memorandum asserts that the amendments "should have little direct impact on the Aid to Dependent Children caseload, since those needs previously recognized under State regulations would continue to be met as items of special need under the ADC program, rather than under EAF."

ute, even though based on a classification that is "both over-inclusive and under-inclusive," met the equal protection standards enunciated in *Weinberger v. Salfi, supra,* and *Dandridge v. Williams, supra.*

We have no quarrel with the legitimacy of the interest that the state seeks to protect here; as the Commissioner points out, the protection of public resources against fraudulent or spurious claims is a proper and even necessary legislative concern. See, e. g., *Jimenez v. Weinberger,* 417 U.S. 628, 636, 94 S.Ct. 2496, 2501, 41 L.Ed.2d 363 (1974); *Shapiro v. Thompson,* 394 U.S. 618, 637, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600 (1969). Our difficulty is in seeing how the classification drawn by the New York legislature reasonably relates to this concern, even as a "rough accommodation." See *Dandridge, supra,* 397 U.S. at 485, 90 S.Ct. at 1161.

Section 350–j(2)(e) draws a line between recipients of public assistance, including plaintiffs in this action, and all others eligible for emergency assistance, including persons receiving public payments such as social security benefits, supplemental security income (SSI) benefits, unemployment compensation, or workers' compensation. There is, however, nothing in the record to establish that public assistance recipients have a greater propensity than others for asserting fraudulent claims of lost or stolen funds, and such a propensity is not to be presumed. "Poverty and immorality are not synonymous." *Edwards v. California,* 314 U.S. 160, 177, 62 S.Ct. 164, 168, 86 L.Ed. 119 (1941). Where there is an equal potential for fraud among those in each of two classes, it is not reasonable on this basis to treat those classes differently. The Supreme Court has left no room for doubt in this area. Striking down a closely analogous classification in the Social Security Act in *Jimenez v. Weinberger, supra,* 417 U.S. at 637, 94 S.Ct. at 2502, the Court stated:

> [F]or all that is shown in this record, the two subclasses of illegitimates [affected by the statutory provision at issue] stand on equal footing, and the potential for

spurious claims is the same as to both; hence to conclusively deny one subclass benefits presumptively available to the other denies the former the equal protection of the laws . . . .

See also *United States v. Clark,* 445 U.S. 23, 30–31, 100 S.Ct. 895, 901–902, 63 L.Ed.2d 171 (1980).

■ Finally, we do not agree with the district court that considerations of administrative efficiency are sufficiently compelling to sustain the lines drawn by the statute. While we do not doubt the difficulties involved in verifying claims of lost or stolen cash, we see no basis for concluding that verification of claims by persons not receiving public assistance—who are not denied the opportunity to document their losses—is any easier than the verification of claims by AFDC and other public assistance recipients. Nor are we persuaded that the state lacks any alternative means of protection that would be less burdensome to one class of people. Indeed, as plaintiffs note, the state may recoup fraudulently obtained public assistance benefits from future payments, a remedy that may not be available in the case of persons not receiving public assistance. In sum, while we recognize that legislation of this kind always "involves drawing lines among categories of people, lines that necessarily are sometimes arbitrary," *Califano v. Aznavorian,* 439 U.S. 170, 174, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978), the linedrawing process must itself rest on a rational foundation. Id. In this case, we conclude that it did not.

### IV

We turn finally to the Commissioner's cross-appeal from the provision in the district court's order permitting plaintiffs to seek attorneys' fees, costs, and disbursements "upon appropriate motion made within three (3) months after the completion of all appellate proceedings herein." Relying principally on *White v. New Hampshire Department of Employment Security,* 629 F.2d 697 (1st Cir. 1980), the Commissioner argues that applications for attorneys' fees pursuant to 42 U.S.C. § 1988

must be made within ten days after the entry of judgment in the district court, in conformity with the time limit imposed by Fed.R.Civ.P. 59(e).[13]

■ We note in passing that the view adopted in *White* has not been followed by some other courts, see *Bond v. Stanton*, 630 F.2d 1231, 1234 (7th Cir. 1980); *Knighton v. Watkins*, 616 F.2d 795, 797 (5th Cir. 1980). In this case, however, we need not enter this area of dispute. We are satisfied that Judge Gagliardi acted within his power in reserving the issue of fees, together with costs and disbursements, for subsequent action. Indeed, this exact device was suggested by the First Circuit panel in *White* as a means of circumventing the strictures of Rule 59(e) when appropriate to do so. See 629 F.2d at 704. Moreover, the reservation of these issues in this case does not raise problems of finality that might arise in other circumstances, see id.; since the judgment here was one granting in part and denying in part plaintiffs' motion for an injunction, it is appealable even as an interlocutory order under 28 U.S.C. § 1292(a)(1). Finally, we do not believe that the judge abused his discretion in allowing plaintiffs three months to file their motion. This is not an unreasonable length of time for litigation that has now been in the courts for four years.

Accordingly, we will not disturb the district court's order on this issue.

## V

Having concluded that the loss-or-theft provision of New York's emergency assistance program denies plaintiffs the equal protection of the laws, we reverse the judgment of the district court with respect to this provision and enjoin its enforcement. In all other respects, the judgment of the district court is affirmed.

---

**13.** The Rule provides: "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."