Hillsborough
No. 80-490

DAVID ROYER, ADMINISTRATOR OF THE ESTATE OF
ARTHUR J. ROYER

v.

BENJAMIN C. ADAMS, COMMISSIONER
NEW HAMPSHIRE DEPARTMENT OF EMPLOYMENT SECURITY

November 20, 1981

*Raymond J. Kelly*, of Manchester, by brief and orally, for the plaintiff.

*Gregory H. Smith*, attorney general, and *Edward F. Smith*, general counsel (*Michael M. Black* and *Dorothy M. Silver* on the brief, and *Daniel J. Mullen* orally), for the defendant.

PER CURIAM. The issue in this case is whether a plaintiff, who prevailed on a 42 U.S.C. § 1983 claim in State court, may recover attorney's fees under 42 U.S.C. § 1988 when he filed a motion for fees approximately two months after the trial court entered its final decree. We hold that attorney's fees are recoverable and reverse the Trial Court (*Batchelder*, J.).

On October 9, 1974, the plaintiff filed a "Bill in Equity and Petition for Declaratory Relief" in the Hillsborough County Superior Court. He claimed that the department of employment security's practice of terminating unemployment compensation claimants' benefits without a prior hearing violated several State statutes and fourteenth amendment due process rights protected by 42 U.S.C. § 1983. The trial court asserted jurisdiction under the general equity powers of the superior court and 42 U.S.C. § 1983 and ruled that the department's method of discontinuing benefits deprived the recipients of due process. On October 25, 1976, the trial court ordered the department to adopt pre-termination procedures that would afford claimants due process. This court unanimously upheld the trial court, *see Royer v. State Dep't of Empl. Security*, 118 N.H. 673, 394 A.2d 828 (1978) (hereinafter referred to as *Royer I*), and remanded for issuance of a final order. The trial court held two remand hearings, and in early July 1979 issued its final order detailing acceptable termination procedures.

On September 28, 1979, the plaintiff filed a motion for attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 (hereinafter referred to as the Fees Act). The plaintiff sought to recover the attorney's fees he had incurred for legal representation during the trial on the merits and on the appeal. The trial court denied the plaintiff's motion in November 1980, and the plaintiff appealed to this court.

## I. *State Court Jurisdiction Over § 1983 Actions*

Section 1983 grants individuals a right of action against "[e]very

person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . ." 42 U.S.C. § 1983. The plaintiff's original pleading, which alleged a deprivation of due process, was brought under § 1983. The trial court and this court found the department's method of terminating benefits to be procedurally deficient, agreeing that it deprived the plaintiff of fourteenth amendment rights. The plaintiff thus prevailed on his § 1983 claim, because "the scope of § 1983 is identical with those rights guaranteed by the Fourteenth Amendment." *Poirier v. Hodges*, 445 F. Supp. 838, 842 (M.D. Fla. 1978).

The defendant argues that New Hampshire courts should not entertain § 1983 actions. In *MBC, Inc. v. Engel*, 119 N.H. 8, 10, 397 A.2d 636, 637 (1979), we held that jurisdiction to hear a § 1983 suit lies in State court. The United States Supreme Court has also approved State court jurisdiction over § 1983 claims. *See Martinez v. California*, 444 U.S. 277, 283 n.7 (1980). The defendant urges us to reexamine *Engel*, but we choose not to do so. *Engel* promotes an important public policy: it encourages individuals whose civil rights have been violated to file § 1983 claims in State court. We believe that our State courts are no less proper a forum for the vindication of civil rights than the federal courts.

Judge Sandra D. O'Connor, now a United States Supreme Court Justice, shares this view. "It is a step in the right direction to defer to the state courts and give finality to their judgments on federal constitutional questions where a *full* and *fair* adjudication has been given in state court." O'Connor, *Trends in the Relationship Between the Federal and State Courts from the Perspective of a State Court Judge*, 22 WILLIAM & MARY L. REV. 801, 814–15 (1981) (emphasis in original). Justice O'Connor quotes a passage from *Sumner v. Mata*, 101 S. Ct. 764, 770 (1981), written by Justice William H. Rehnquist: "State judges as well as federal judges swear allegiance to the Constitution of the United States, and there is no reason to think that because of their frequent differences of opinions as to how that document should be interpreted that all are not doing their mortal best to discharge their oath of office." *Id.* Providing complainants with a state forum allows state courts to decide important constitutional questions. We continue to believe that our State courts should have the opportunity to address the crucial civil rights issues which § 1983 cases raise rather than require all of our State governmental units to have to defend their actions only in front of our two federal judges.

Only two hundred eighty § 1983 cases were filed in 1960 in all jurisdictions; by 1970 the number had grown to 3,586; and by 1971 the number of cases had reached 4,609. Douglas, *State Judicial Activism—The New Role for State Bills of Rights*, 12 SUFFOLK U.L. REV. 1123, 1133 (1978). This dramatic growth continued through 1977 when 13,113 cases were filed. *Maine v. Thiboutot*, 448 U.S. 1, 27 n.16 (1980) (Powell, J., dissenting). Individuals are enforcing their constitutional rights in growing numbers. We believe that New Hampshire residents bringing § 1983 claims should be able to enforce their constitutional rights in State court and that New Hampshire governmental units should be able to defend their actions in State court. We now address the merits of the plaintiff's claim.

II. *The Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988*

██ Section 1988 provides that a court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs" in actions to enforce § 1983. 42 U.S.C. § 1988. When § 1983 actions are brought in state courts, § 1988 is available as a remedy because the Supreme Court has held that the Fees Act is an integral part of Congress' scheme to encourage compliance with § 1983. *Maine v. Thiboutot*, 448 U.S. at 11 (1980); *see* Wolf, *Pendent Jurisdiction, Multi-Claim Litigation, and the 1976 Civil Rights Attorney's Fees Awards Act*, 2 W. NEW ENG. L. REV. 193, 236 (1979) (state courts have concurrent jurisdiction over federal claims, so "it follows that they also have the power to apply all federal remedial statutes which may assist the state court in granting full relief") (footnotes omitted). The Fees Act is available as a remedy in all cases which were pending in 1976, when the Fees Act was passed. *Hutto v. Finney*, 437 U.S. 678, 694–95 n.23 (1977); *Gagne v. Maher*, 455 F. Supp. 1344, 1346 (D. Conn.), *aff'd*, 100 S. Ct. 2570 (1978). *Royer I* was pending in 1976; therefore it falls within the ambit of § 1988.

The trial judge did not dispute the availability of § 1988 as a remedy. Rather, he was concerned with the timeliness of the plaintiff's complaint. The plaintiff's request for attorney's fees was filed two months after the trial court issued its decree in July 1979. The trial judge, following *White v. New Hampshire Department of Employment Security*, 629 F.2d 697 (1st Cir. 1980), *cert. granted*, 101 S. Ct. 1692 (1981), ruled that this request was filed too late.

In *White* the First Circuit set aside an award of attorney's fees because the plaintiffs requested them four and one-half months after entry of judgment. *Id.* at 699. The court held that fees must be requested prior to judgment or within the ten-day period for

alteration or amendment of judgment under the federal rules. *Id.* In other words, the First Circuit characterized motions for attorney's fees as motions to alter or amend judgment.

Section 1988 is silent about the time period in which claims must be filed; consequently, the issue is currently heavily litigated. A growing number of circuit courts have recently rejected the approach the First Circuit chose to follow. The Fifth Circuit in *Knighton v. Watkins*, 616 F.2d 795, 797 (5th Cir. 1980), reasoned that attorney's fees under § 1988 normally will be sought after judgment since they do not seek a change in judgment but what is due *"because of* the judgment." (Emphasis added.) The *Watkins* court considered attorney's fees to be costs, and held that there was no jurisdictional time limit governing the filing of a motion to seek fees because Fed. R. Civ. P. 54(d), which addresses the award of costs, imposes no time limit. *Id.* at 798. *Accord, Bond v. Stanton*, 630 F.2d 1231, 1234 (7th Cir. 1980); *Van Ooteghem v. Gray*, 628 F.2d 488, 497 (5th Cir. 1980), *cert. denied*, 101 S. Ct. 2031 (1981); *Williams v. Alioto*, 625 F.2d 845, 848 (9th Cir. 1980), *cert. denied*, 101 S. Ct. 1723 (1981).

■ We agree with these circuit courts that a motion for attorney's fees does not seek a change in judgment; however, we do not agree that § 1988 attorney's fees are "costs" within the meaning of State law. *See Silva v. Botsch*, 121 N.H. 1041, 1044, 437 A.2d 313, 315 (1981) (allowable costs under RSA 525:13–19 do not include attorney's fees). No New Hampshire statute or court rule currently governs the time period in which a *federal* claim for attorney's fees must be filed in *State* court; therefore, the request is proper if made within a reasonable time. *Silva v. Botsch*, 121 N.H. at 1044, 437 A.2d at 315. Until a statute or court rule establishes a specific time period, we will deny attorney's fees for failure to file a timely claim only when "special circumstances would render such an award unjust." *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34, 37–38 (2d Cir. 1978) (quoting legislative history of § 1988). We do not consider the two-month delay in this case to constitute such a "special circumstance," particularly because the defendant was aware that the plaintiff requested attorney's fees in his original pleadings.

■ Accordingly, we remand to the trial court for a calculation of attorney's fees. Fees should be computed for the trial on the merits, the appeal of *Royer I* to this court, and the hearing and appeal on this claim. The amount must not be calculated to punish the defendant or reward the plaintiff, but shall be "reasonable."

*See Planned Parenthood v. Citizens for Com. Action,* 558 F.2d 861, 871 (8th Cir. 1977).

*Reversed and remanded.*

BATCHELDER, J., did not sit.