PAUL DRAPER & others[1] *vs.* TOWN CLERK OF GREENFIELD & others.[2]

Suffolk.  May 6, 1981. — August 25, 1981.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Civil Rights,* Motion for attorney's fees, Attorney's fees.

A motion by plaintiffs' for attorneys' fees under 42 U.S.C. § 1988 (1976), which was filed some sixty days after judgment was entered on their § 1983 claim, was timely where the judgment explicitly provided that entry be made "without prejudice to any party's right to separately move for attorney's fees and costs." [448-452]

Plaintiffs in an action pursuant to 42 U.S.C. § 1983 (1976) who claimed that G. L. c. 46, § 1, as amended through St. 1968, c. 84, § 1, violated both the Massachusetts and United States Constitutions and who were granted the relief they sought on statutory, rather than constitutional, grounds, as suggested by one of the defendants, were "prevailing parties" for purposes of an award of attorneys' fees under § 1988. [452-454]

In an action under 42 U.S.C. § 1983 (1976) in which the plaintiffs prevailed against certain local and State officials in their claim that the name of the father of an illegitimate child, upon request of both parents, must be placed on the child's birth certificate despite the provisions to the contrary of G. L. c. 46, § 1, after its amendment by St. 1968, c. 84, § 1, and prior to its amendment by St. 1977, c. 161, there were no special circumstances which would justify a denial of attorneys' fees under § 1988. [454-456]

Award of attorneys' fees under 42 U.S.C. § 1988 (1976) pursuant to the factors set forth in *Johnson* v. *Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). [456-458]

---

[1] Paul Draper and Kathleen Murphy on behalf of themselves and as parents of Rosaleen Murphy-Draper; M. Guy Ross and Jennifer Franklin on behalf of themselves and as parents of Jeremy Franklin-Ross; Catalino Rivera and Patricia Hubert on behalf of themselves and as parents of Luis Antonio Rivera-Hubert.

[2] City clerk of Northampton, acting registrar of vital records and statistics for the Commonwealth, Commissioner of the Department of Public Health, and "all other persons similarly situated."

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 27, 1978.

The case was heard by *Liacos,* J. Following entry of judgment, a motion for award of attorneys' fees was reported by *Abrams,* J.

*James A. Bisceglia & Jim Hammerschmith* for the plaintiffs.

*Judith S. Yogman,* Assistant Attorney General, for the defendants.

LYNCH, J. This case, here on the reservation and report of a single justice, concerns a claim by the plaintiffs against the State defendants for attorneys' fees under 42 U.S.C. § 1988 (1976).[3]

The defendants contend that the plaintiffs' motion for fees was untimely and that we have no jurisdiction to consider it; alternatively, they argue that on the merits the plaintiffs are entitled to no fees under § 1988, or to a much smaller award of fees than requested. We find both that the motion was timely and that the plaintiffs are entitled to attorneys' fees in the amount of $2,600. Although the plaintiffs have produced time records only through April 8, 1980, we do not think that any additional amount is justified for work done subsequent to that date.

The facts underlying this litigation (as set out in the parties' statement of agreed facts) are as follows: On January 27, 1978, the plaintiffs, three sets of unmarried parents with children born in Massachusetts between 1969 and 1977, sought declaratory and injunctive relief contending that G. L. c. 46, § 1, as amended through St. 1968, c. 84, § 1, was unconstitutional under art. 1 of the Declaration of

---

[3] Title 42 U.S.C. § 1988 (1976) reads in pertinent part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, . . . or in any civil action or proceedings, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." State courts are clearly empowered to hear § 1988 claims. See *Maine* v. *Thiboutot,* 448 U.S. 1, 10-11 (1980).

Rights of the Constitution of the Commonwealth and the
equal protection clause of the Fourteenth Amendment to
the United States Constitution. Named as defendants were
various State and local officials charged with keeping rec-
ords of births and other vital statistics. The plaintiffs'
challenge was directed to G. L. c. 46, § 1, as it existed be-
tween 1969 and 1977, after its amendment by St. 1968,
c. 84, § 1, and before its further amendment by St. 1977,
c. 161. In that time interval the statute provided that city
and town clerks should not record on the birth certificates of
illegitimate children the name of, or any other information
about, the child's father. Before its 1968 amendment, the
law had allowed such information to be recorded on the
written request of both parents, and the 1977 amendment
restored the statute to this form. The registrar of vital
statistics, however, in a July, 1977, memorandum to all city
and town clerks in the Commonwealth, interpreted this
later amendment as applying only to births *after* the amend-
ment's effective date (August 3, 1977), deciding, in other
words, that the fathers' names could never be recorded on
the birth certificates of illegitimate children (such as those
of the plaintiff parents) born between 1969 and August 3,
1977.

At a hearing before the single justice on March 8, 1978,
the defendants acknowledged that a blanket prohibition
against recording both parents' names as requested by the
plaintiffs would raise constitutional questions. The defend-
ants also pointed out that remedial legislation had been filed
to correct the situation.

The single justice, on March 14, 1978, granted the plain-
tiffs' request for a preliminary injunction although denying
the plaintiffs' motion for certification of the case as a class
action. His ruling did not reach any of the constitutional
claims raised by the plaintiffs. Instead he adopted the
interpretation made by one of the municipal defendants and
concluded that the 1977 amendment of G. L. c. 46, § 1, ap-
plied to all births, regardless of date, and that upon proper
written request by both parents after August 3, 1977, the

name of the father of an illegitimate child born at any time must be placed on his or her birth certificate. The defendants immediately complied. A year later, on March 1, 1979, the plaintiffs moved for summary judgment. Following oral argument, the single justice asked the parties to submit a proposed form of final judgment. They did so in a form that substantially adopted the conclusions of the previous single justice in his memorandum of decision, and the single justice entered judgment on May 30, 1979. The last paragraph of the judgment provided that entry be made "without prejudice to any party's right to separately move for attorney's fees and costs, pursuant to 42 U.S.C. § 1983."

On June 4, 1979, the plaintiffs offered to settle their claim for fees at a rate of $60 an hour, or $3,925. The offer was not accepted, and the plaintiffs filed a motion for fees on July 30, 1979. Initially, the defendants opposed the motion on substantive grounds, disputing both the plaintiffs' entitlement to fees and the amount of fees requested. Then in September, 1980, the defendants moved to dismiss the motion for fees on the ground that it was not timely filed. On March 13, 1981, a single justice reserved and reported the fees dispute to this court.

The plaintiffs initially requested attorneys' fees through April 8, 1980, in the total amount of $12,973. This figure was based on rates of $60 and $75 an hour for the various attorneys involved, with seventy-two and three-fourths hours spent on the merits of the case, and 104⅔ hours spent on the fees issues. In their brief before this court, however, the plaintiffs amended their fee request to $14,957. This new figure was derived by adjusting the $12,973 figure downward (to $12,464) by billing the travel hours included in the original hourly totals at two-thirds of the normal hourly rate;[4] and then adjusting $12,464 upward by 20% to compensate the plaintiffs for the delay in receiving payment.

---

[4] The plaintiffs calculate this total travel time as twenty and one-fourth hours. The time sheets submitted by the various attorneys who worked on the case, however, list travel time totaling twenty-four and two-thirds hours.

Additional time has been spent subsequent to April 8, 1980, including the preparation of a sixty-nine page reply brief.[5]

*Timeliness.* The defendants base their claim that the attorneys' fees request was untimely largely on the reasoning of *White* v. *New Hampshire Dep't of Employment Security*, 629 F.2d 697 (1st Cir. 1980), cert. granted, 451 U.S. 982 (1981), and a case heavily relied on in *White*, *Hirschkop* v. *Snead*, 475 F. Supp. 59 (E.D. Va. 1979). In both cases trial courts had entered final judgments on the plaintiffs' § 1983 claims with no mention by the parties whatsoever of § 1988 fees. In each, some time after these final judgments (one month in *Hirschkop*; four and one-half months in *White*), the plaintiffs requested attorneys' fees. On these facts both the *Hirschkop* and *White* courts held that the requests were untimely and denied fees, reasoning that because the award of fees under § 1988 is so much a "part of the overall relief sought and granted during the course of a particular civil rights action," *White*, *supra* at 704, those fees must be determined before the entry of final judgment or at the latest presented within ten days after final judgment by a motion to reopen that judgment under Fed. R. Civ. P. 59 (e). *White*, *supra* at 699; *Hirschkop*, *supra* at 62. While both courts acknowledged that rule 54 (d) provides for the awarding of the "costs" of litigation after final judgment, they decided that such "costs" include only the sums routinely assessed by a court clerk, items far different from § 1988 fees which are "closely intertwined with the merits of the primary dispute and which . . . require careful factual and legal analysis by the court." *White*, *supra* at 702-703. See *Hirschkop*, *supra* at 63. And each noted that under Fed. R. Civ. P. 6 (b), they were forbidden to extend rule 59 (e)'s ten-day limitation; indeed, that they were without jurisdiction to make a fees award once the ten days had expired. See *White*, *supra* at 699, 705; *Hirschkop*, *supra* at 60.[6]

---

[5] The plaintiffs' motion during oral argument for leave to file this overlong brief has not been acted on by this court.

[6] The court in *White* mentioned, however, that in some cases the strict time limits of rule 59 (e) might be avoided by a rule 60 motion to reopen

In contrast to the position of *White* and *Hirschkop*, the Fifth Circuit in *Knighton* v. *Watkins*, 616 F.2d 795, 797-798 (5th Cir. 1980), held that § 1988 fees are "costs" within the meaning of Fed. R. Civ. P. 54 (d), and hence can be awarded at any time after final judgment.[7] The court drew on the language of § 1988 which states that the section's fees should be awarded "as part of the costs"; it also reasoned that because § 1988 fees are available only to "prevailing part[ies]," the usual time for requesting and granting the fees is after a final judgment in the underlying civil rights litigation. *Watkins, supra* at 797-798. For other cases treating § 1988 fees as rule 54 (d) "costs," see *Gary* v. *Spires*, 634 F.2d 772, 773 (4th Cir. 1980); *Bond* v. *Stanton*, 630 F.2d 1231, 1234 (7th Cir. 1980); *Williams* v. *Alioto*, 625 F.2d 845, 848 (9th Cir. 1980), petition for cert. filed, 49 U.S.L.W. 3334 (Nov. 4, 1980). Cf. *Obin* v. *District No. 9, Int'l Ass'n of Machinists & Aerospace Workers*, 651 F.2d 574 (8th Cir. 1981) (motion for attorneys' fees raises a collateral and independent claim and is therefore not governed by the ten-day limitation in rule 59 [e]).

Although the plaintiffs' fee request is pursuant to a Federal statute, 42 U.S.C. § 1988 (1976), the question of the timeliness of the request is governed by the Massachusetts Rules of Civil Procedure. See Hart, The Relations between State and Federal Law, 54 Colum. L. Rev. 489, 508 (1954). Compare *Martinez* v. *California*, 444 U.S. 277, 284 (1980). At all times in this litigation, however, Mass. R. Civ. P. 54 (d) and 59 (e), 365 Mass. 820, 827 (1974), were virtually identical to their Federal counterparts.[8] Ordinarily, then, we would be strong-

---

judgment for a fees request. *White, supra* at 704 n.9. See *Fox* v. *Parker*, 626 F.2d 351, 353 n.2 (4th Cir. 1980).

[7] Although rule 54 (d) places no time limit on a request for costs, some courts have imposed equitable time bars. See, e.g., *Gary* v. *Spires*, 634 F.2d 772, 773 (4th Cir. 1980) (deferment of demand for costs [including § 1988 fees] until after expiration of appeal period makes their awarding inequitable; defendants "severely prejudiced" by delay in request because decision to appeal influenced by amount awarded).

[8] Massachusetts Rule of Civil Procedure 54 (d), as amended, 382 Mass. 821 (1980), now differs somewhat from the Federal version. This case, however, is governed by the pre-amendment form of this rule.

ly influenced by the interpretation given these rules as applied to § 1988 in the Federal courts, see *Rollins Environmental Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 179-180 (1975); and here, where the Federal courts provide two different answers, we would generally choose between them. But we find that the choice need not be made to resolve this case. For even if we were to adopt the more restrictive reasoning of the *White* and *Hirschkop* courts as to the timeliness of a § 1988 fees request, we would still find the request here timely.

As noted above, the reasoning of the *White* and *Hirschkop* courts was that once a court had entered a final judgment in an entire civil rights action, no attorneys' fees could be awarded under § 1988 unless there was a timely motion to reopen the judgment under rule 59 (e). An essential part of each decision was the finding that there had been a final judgment in the entire action with no mention of § 1988 fees. We cannot find that essential element in this case. Here, the May 30, 1979, "judgment" explicitly left open the matter of attorneys' fees as it was made "without prejudice to any party's right to separately move for attorney's fees and costs." From this it is clear that the court was anticipating the possibility of further litigation over fees, an issue, if we accept the *White-Hirschkop* reasoning, which is part of the "main body" or "overall relief" of a civil rights action. See *White, supra* at 704. What constitutes a "final judgment" for purposes of Mass. R. Civ. P. 54 (a) (or its counterpart Fed. R. Civ. P. 54 [a], construed in *White* and *Hirschkop*), is determined more by its characteristics than by the fact that a judge directed that it be "entered." See *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 676-677 (1977). Thus, "[t]he test of the finality of a decision is whether it terminates the litigation on its merits, directs what judgment shall be entered, and leaves nothing to the judicial discretion of the trial court." *Pollack* v. *Kelly*, 372 Mass. 469, 476 (1977), quoting from *Real Property Co.* v. *Pitt*, 230 Mass. 526, 528 (1918). See *Catlin* v. *United States*, 324 U.S. 229, 233 (1945). Clearly, the judgment here, in its

anticipation of further litigation on the fees issue, is not of this "final" character. Instead, it resembles the judgment which the court in *Gurule* v. *Wilson,* 635 F.2d 782, 786-788 (10th Cir. 1980), after accepting the characterization of § 1988 fees put forth in *White,* held to be not final because it resolved the plaintiffs' § 1983 claims but failed to resolve the claim for fees under § 1988 raised in the plaintiffs' complaint. (For cases reaching similar results, see *United Handicapped Fed'n* v. *Andre,* 622 F.2d 342, 345 [8th Cir. 1980]; *Anderson* v. *Morris,* 500 F. Supp. 1095, 1105-1106 [D. Md.], aff'd 636 F.2d 55 [4th Cir. 1980]).[9] Indeed, the court in *White* took pains to distinguish from the facts in that case, a case such as this one where there is a "judgment" which includes "an express reservation of the issue of fees." See *White, supra* at 704.

The defendants argue in a different but analogous vein that, even if the May 30 judgment was not "final" as to the entire action, the judge did make a final judgment on the plaintiffs' § 1983 claim, and that the § 1988 claim merged into this partial final judgment and could not be raised thereafter. It is possible, under the *White-Hirschkop* approach, that the entry of partial final judgment as to the § 1983 portion of a case (pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 [1974]), with no mention or reservation of a § 1988 fees claim might terminate the fees claim. See *David* v. *Travisono,* 621 F.2d 464, 467 n.2 (1st Cir. 1980). But here not only is it unclear that the May 30 judgment was "final" as to the plaintiffs' § 1983 claim,[10] but also the judg-

----

[9] It is true that the case at bar would be more like *Gurule* and the others cited had the plaintiffs asked for fees in their original complaint, and there had thus been a formal request for fees pending before the court on May 30, 1979. But we think that the express recognition in the judge's opinion on that date that a contest on fees might follow imbued the May 30 decision with the same lack of finality found in *Gurule* and the other cases. Cf. *Fase* v. *Seafarers Welfare & Pension Plan,* 79 F.R.D. 363, 366 n.6 (E.D.N.Y.), aff'd 589 F.2d 112 (2d Cir. 1978).

[10] Under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), a court can enter a final judgment as to part of a case "only upon an express determination that there is no just reason for delay and upon an express direction

ment, through its "without prejudice" language, explicitly provided that the § 1988 issue did not merge into any decision on the § 1983 claim. Hence we are unpersuaded by this argument of the defendants as well. Having found, therefore, the plaintiffs' motion for fees to be timely, we move on to a consideration of the merits of their claim.[11]

*Entitlement to fees.* There are essentially two prerequisites to an award of attorneys' fees under § 1988, both derived from the language of that section: first, that the applicant be considered a "prevailing party" in the litigation; and second, that a court exercise its "discretion" to award fees in the applicant's favor. Turning to the first requirement, it is clear here that the plaintiffs were the prevailing party. They won a preliminary injunction which remained unchanged in the single justice's May 30 decision on the merits.[12] The result they sought by the litigation, which was the right to place the unmarried fathers' names on the birth certificates of their children, was achieved. True they did not suggest the precise statutory ground that was the basis of the decision in their favor. The suggestion came instead from one of the municipal defendants, the town clerk of Northampton. Indeed the plaintiffs did not even assert a statutory challenge to the application of G. L. c. 46, § 1, until they sought to amend their complaint sometime after it was filed.[13] But the question of which party prevailed for purposes of § 1988 is determined by the results

for the entry of judgment." These determinations should appear on the record, see *New England Canteen Serv., Inc.* v. *Ashley,* 372 Mass. 671, 677-678 (1977). Neither is present here.

[11] Our conclusion that the motion was timely makes unnecessary consideration of the plaintiffs' request under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), to reopen the judgment for a fees request. See citations in note 6, *supra.*

[12] As indicated in our discussion of the timeliness question, it is unclear that the May 30 decision was technically a "final judgment" even as to the plaintiffs' claims, apart from fees. See *supra* at 451-452 & n.10. But all parties concede that it in essence settled all questions but the fees issue, and hence is relevant to the "prevailing party" determination.

[13] The motion was never acted upon by the court.

achieved rather than by the source of a particular argument. The plaintiffs are "prevailing parties" for § 1988 fee purposes "if they succeed on any significant issue in litigation which achieves some of the *benefit* the parties sought in bringing suit" (emphasis added). *Nadeau* v. *Helgemoe*, 581 F.2d 275, 278-279 (1st Cir. 1978). See *Bagby* v. *Beal*, 606 F.2d 411, 415 (3d Cir. 1979) (focus is on relief achieved by plaintiff); *Buckton* v. *National Collegiate Athletic Ass'n*, 436 F. Supp. 1258, 1265 (D. Mass. 1977) (plaintiff who got injunction allowing him to play hockey for three years was a § 1988 "prevailing party" for he prevailed "in a very practical and meaningful sense").

It is also unimportant for "prevailing party" purposes that the May 30 decision on the merits was in essence a consent judgment, derived from negotiation and agreement between the parties. The legislative history of § 1988 makes clear that fees can be awarded when a case ends in a negotiated settlement, S. Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), reprinted in [1976] U.S. Code Cong. & Ad. News 5908, 5912, and this was recently affirmed by the Supreme Court in *Maher* v. *Gagne*, 448 U.S. 122, 129 (1980). Accord, *Hanrahan* v. *Hampton*, 446 U.S. 754, 757 (1980). Of course every time a plaintiff achieves a consent judgment in his favor he is not necessarily a "prevailing party." As set out in *Nadeau* v. *Helgemoe, supra* at 280-281, a plaintiff who prevails through negotiation is not prevailing if his suit is "completely superfluous" rather than a "necessary and important" factor in achieving the agreed-to relief; moreover, the relief offered by the defendant must not be "gratuitous," i.e., not required by law. See *Chicano Police Officers Ass'n* v. *Stover*, 624 F.2d 127, 131 (10th Cir. 1980); *United Handicapped Fed'n* v. *Andre*, 622 F.2d 342, 345-348 (8th Cir. 1980). Those tests are easily satisfied here where, up until the time of the preliminary injunction, the defendants stuck by the registrar's July, 1977, reading of the statute, and where the relief eventually ordered was held compelled by the correct interpretation of the statute.

A final issue concerning the classification of the plaintiffs as "prevailing parties" under § 1988 is whether it matters

that the decision in their favor was based on statutory rather than Fourteenth Amendment grounds. On this question the legislative history is quite specific. A plaintiff who prevails on a statutory claim in a § 1983 action is still entitled to § 1988 fees if his constitutional claim was "substantial" under the standard of *Hagans* v. *Lavine*, 415 U.S. 528, 536-538 (1974), and if the statutory and constitutional claims arise out of "common nucleus of operative fact," a standard explained in *United Mine Workers* v. *Gibbs*, 383 U.S. 715, 725 (1966). See H.R. No. 1558, 94th Cong, 2d Sess. 4 n.7 (1976); *Maher* v. *Gagne, supra* at 132-133 n.15; *Lund* v. *Affleck*, 587 F.2d 75, 77 (1st Cir. 1978); *Seals* v. *Quarterly County Court*, 562 F.2d 390, 393-394 (6th Cir. 1977). Both standards are satisfied in this case. The single justice noted in his decision accompanying the preliminary injunction that the State defendants were "unable to articulate *any* intelligible purpose" served by their reading of the statute, which, given even minimal Fourteenth Amendment scrutiny, would seem to raise some constitutional problems; furthermore he noted that the State defendants conceded the presence of "substantial constitutional questions." And the statutory and constitutional claims not only share a "common nucleus of operative facts," the facts behind each claim are identical. Hence that the relief achieved by the plaintiffs was granted on statutory rather than constitutional grounds is no bar to their claim for fees under § 1988.

We move on to the question whether we would exercise our "discretion" to award fees in the plaintiffs' favor. Although the statute speaks in broad and general terms about a court's "discretion" to award fees, several Federal courts have followed the suggestion in the legislative history that such discretion is to be governed by the same standard applied under the fee provision of the 1964 Civil Rights Act, i.e., that a successful plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Sen. Rep. No. 1011, *supra* at 4, quoting from *Newman* v. *Piggie Park Enterprises, Inc.*, 390

U.S. 400, 402 (1968). However, the statute cannot be interpreted to mean that attorneys' fees must be awarded in all cases, since the House Committee on the Judiciary specifically considered and rejected the option of providing that the award be mandatory. See H.R. Rep. No. 1558, 94th Cong., 2d Sess. 8 (1976). Cases are not numerous in which the award of fees is denied. See generally *Riddell* v. *National Democratic Party*, 624 F.2d 539, 544-545 (5th Cir. 1980). For a collection of such cases, see Annot., Construction and Application of Civil Rights Attorney's Fee Awards Act of 1976 (amending 42 U.S.C. § 1988), Providing that Court May Allow Prevailing Party, Other than United States, Reasonable Attorney's Fee in Certain Civil Rights Actions, 43 A.L.R. Fed. 243, § 14 [b], at 282-285 [1979]). Examples include a suit which involved an attack on juvenile curfew ordinance, *Naprstek* v. *Norwich*, 433 F. Supp. 1369, 1370-1371 (N.D.N.Y. 1977), and cases where the plaintiff's attorney was compensated by his contingent share of a high damage award, *Zarcone* v. *Perry*, 581 F.2d 1039, 1044 (2d Cir. 1978), cert. denied, 439 U.S. 1072 (1979); *Buxton* v. *Patel*, 595 F.2d 1182, 1185 (9th Cir. 1979).[14] Many of the equitable reasons which come to mind for denying fees in this case have been rejected. Thus, a denial of fees was said to be not warranted because the case was fairly simple, *Staten* v. *Housing Auth. of Pittsburgh*, 638 F.2d 599, 605 (3d Cir. 1980); because the plaintiffs were represented by legal services attorneys, *New York Gaslight Club, Inc.* v. *Carey*, 447 U.S. 54, 70 n.9 (1980); because the burden of any fee award will fall on State taxpayers, *Aware Woman Clinic, Inc.* v. *Cocoa Beach*, 629 F.2d 1146, 1150 (5th Cir. 1980), and cases cited; or because the defendants tried to change the statute through legislation, enforced it in good faith, and cooperated in the litigation, *Supreme Court* v. *Consumers Union*, 446 U.S. 719, 739 (1980); *Aware*

---

[14] But see *Sargeant* v. *Sharp*, 579 F.2d 645, 648-649 (1st Cir. 1978); Comment, Attorney's Fees in Damage Action under the Civil Rights Attorney's Fees Awards Act of 1976, 47 U. Chi. L. Rev. 332, 335-350 (1980).

*Woman Clinic, Inc., supra* at 1149 n.2; *Mid-Hudson Legal Servs., Inc.* v. *G & U, Inc.*, 578 F.2d 34, 37-38 (2d Cir. 1978). Of some relevance perhaps is *Huntley* v. *Community School Bd. of Brooklyn*, 579 F.2d 738, 742 (2d Cir. 1978), where a dismissed school principal recovered $100 damages because the school district's termination mechanisms did not give him the requisite procedural due process, and the court denied any attorneys' fees because the principal had achieved only a "moral victory." We are unable to characterize the results of this litigation as only a "moral victory." Unlike the principal in *Huntley*, the plaintiffs in this case achieved more than merely the psychic benefit of getting the government to admit it acted illegally. Rather, they achieved a tangible and long-term benefit for themselves and their children. If their achievement pales next to some more earthshaking civil rights litigation, this factor should bear more on the amount of fees than on the initial question of entitlement. We find, therefore, no "special circumstances" justifying a denial of fees and we proceed to consider the appropriate amounts of fees to be awarded.[15]

*Fees Due.* Although § 1988 itself states only that a "reasonable" attorney's fee shall be awarded, the legislative history cites *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), as setting out the appropriate standards for the calculation of a § 1988 fee, see S. Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), U.S. Code Cong. & Ad. News 5908, 5913. The *Johnson* opinion lists twelve factors to be considered in setting a reasonable attorney's fee: (1) time and labor expended by attorney, (2) novelty and difficulty of the case, (3) attorney's skill, (4) preclusive effect that case had on counsel's ability to take on other work, (5) attorney's customary fee, (6) contingent nature of the

---

[15] Generally a trial judge sets the appropriate § 1988 fees, and our role is confined to reviewing that award for legal errors or abuse of discretion. But since the case is before us on this point, we see no reason why we should not proceed to make a fee award. See *Furtado* v. *Bishop*, 635 F.2d 915, 920 (1st Cir. 1980).

litigation, (7) unusual time pressures involved in the litigation, (8) amount of money involved in the case and results achieved, (9) experience, ability, and reputation of attorney, (10) undesirability of being associated with the case, (11) length of litigant's and counsel's professional relationship, and (12) awards in similar cases. *Id.* at 717-719. These guidelines are essentially the same criteria for a reasonable fee set out in the ABA Code of Professional Responsibility, DR 2-106 (1978), and have been applied by us in other types of fee setting cases. See, e.g., *Darmetko* v. *Boston Hous. Auth.*, 378 Mass. 758, 764 (1979).

The subject matter of the case was not overly complex, and, although only one of the defendants originally understood it, the solution to the plaintiffs' dilemma was contained in the statute. The result obtained, although real to the plaintiffs, is of questionable significance.[16] The effort and skill required to achieve the result was modest. Four attorneys worked on the case, but only one had more than five years' experience when the litigation commenced and one had been out of law school only one and one-half years. Much of the time spent on the case by these lawyers was duplicative or unproductive, and we conclude that much less time was required than was expended to achieve the modest result. There were no unusual time pressures associated with the case. On the contrary, the case languished after the granting of the preliminary injunction in March, 1978, only to receive renewed interest by the plaintiffs after they were notified by the court that it would be dismissed for lack of prosecution. Nothing of an undesirable nature reflected upon counsel as a result of being associated with the case and neither was a limit imposed on counsel's ability to take on other work. In addition, we believe that no compensation should be awarded for time working on issues on

---

[16] It was represented to the court by the Commonwealth at oral argument and in the brief that no evidence existed that any of the plaintiffs had availed themselves of the remedy afforded them by the decree of May 30, 1979. This was not controverted by the plaintiffs.

which the plaintiffs did not prevail, such as class certification.

We have weighed all of the factors enumerated above and conclude that the plaintiffs are entitled to a fee in the amount of $2,600.

Judgment is to be entered for the plaintiffs in the amount of $2,600.

*So ordered.*