BARBARA ANN CLEARY *vs.* COMMISSIONER OF PUBLIC
WELFARE & another.[1]

Hampshire. January 13, 1984 — November 27, 1985.

Present: ARMSTRONG, DREBEN, & SMITH, JJ.

*Practice, Civil,* Class action, Intervention, Injunction, Discovery. *Moot Question. Civil Rights,* Attorney's fees, Motion for attorney's fees.

After entry of judgment in a class action challenging delays by the Department of Public Welfare in processing claims for food stamps, a food stamp recipient was not entitled to intervene in order to present her own complaint, where the delays which made her a member of the plaintiff class occurred after the entry of judgment and where the facts in her case related to a period of time subsequent to those which had been the subject of trial; however, where the case presented issues which warranted appellate review and where the original plaintiff failed to appeal, the prospective intervener was entitled to participate in the case for the purpose of prosecuting an appeal from the judgment. [144-148]

On appeal from a judgment in a class action challenging delays by the Department of Public Welfare in processing claims for food stamps this court declined to order any injunctive or declaratory relief, where the actions of the department complained of had occurred a number of years earlier, where the record indicated that the department was striving with substantial success to bring its practices into compliance with applicable law, and where any controversy between the parties as to the scope of the sixty-day period for "definitive, and final administrative action" had been made moot by the promulgation of new regulations by the United States Department of Agriculture. [148-151]

On appeal from the denial of a motion for attorney's fees under 42 U.S.C. § 1988 (1976) filed after entry of judgment in a class action challenging delays by the Department of Public Welfare in processing food stamp claims, there was no merit to the department's contention that the motion was advanced too late, where the motion had been filed within ten days of the entry of judgment and thus was timely if considered a motion under Mass.R.Civ.P. 59, and where, in any event, the question of attorney's fees under § 1988 was a collateral matter not inherently within the scope of the judgment in the underlying action, and not subject to any explicit time limit governing its filing. [152-153]

[1] The director of the division of hearings of the Department of Public Welfare.

In a class action challenging delays by the Department of Public Welfare in processing food stamp claims, in which after entry of judgment in favor of the department the plaintiff moved for attorney's fees under 42 U.S.C. § 1988 (1976), on the ground that she had prevailed in the practical sense of having forced the department, as a result of the action, to speed its procedures to comply more nearly with Federal standards, it was error for the judge to deny the plaintiff's motion to compel discovery of certain documents in the department's possession which bore on the relationship between the pendency of the action and the acceleration of the department's processing of food stamp claims. [152-153]

CIVIL ACTION commenced in the Superior Court on May 2, 1975.

The case was heard by *John F. Murphy, Jr.*, J.

*Jim Hammerschmith* for Joanne Weir, intervener.

*William L. Pardee*, Assistant Attorney General, for the defendants.

ARMSTRONG, J. The plaintiff, who had applied for food stamps in September, 1974, had appealed in January, 1975, from the failure of the Department of Public Welfare to take action on her application, and had waited for more than four months for the Department to schedule a hearing on her appeal, commenced this action on May 2, 1975, claiming a denial of her rights under Federal and State law to a speedy disposition of her appeal. She sought certification as representative of a class of persons similarly situated. The class was defined in her complaint as "those [f]ood [s]tamp applicants and recipients who have filed requests for administrative appeals on [f]ood [s]tamp issues and either have not had hearings scheduled or have not received final decisions on their appeals within sixty days after filing." On May 12, 1975, a judge of the Superior Court certified the action as a class action without further definition of the class.[2] On September 15, 1980, after a trial based primarily on statistical records produced by the department, another judge found and ruled that the department was

----

[2] An amended complaint allowed by agreement on April 27, 1978, broadened the description to include persons who "have not had [appeals] decisions implemented within sixty days after filing." See note 8, *infra.*

in substantial compliance with the Food Stamp law and the Federal and State regulations pursuant thereto and denied all relief. Judgment was entered the same day, but the plaintiff, within ten days, filed a motion to amend the judgment on several grounds.[3] At the same time the plaintiff filed a motion for an award of attorney's fees pursuant to 42 U.S.C. § 1988 (1976). The department filed an opposition to those motions, but they were not marked for hearing for several months.

On February 2, 1981, with these motions still pending, one Joanne Weir filed a motion to intervene in the action coupled with an "intervenor's complaint." The latter, as supplemented by her affidavit filed the same day, alleged that Weir had been a food stamp recipient since 1974; that her food stamp benefits had been terminated by the department some time in 1980; that on August 18, 1980, she had filed a fair hearing request; that a hearing had been originally scheduled for September 4, 1980, and rescheduled for September 29, 1980, and again for October 28, 1980, but had to be postponed each time because her legal services attorney had scheduling conflicts; that a hearing finally took place on November 12, 1980, at which "the Northampton welfare office agreed to reinstate [her] family's food stamp benefits effective as of September 1, 1980," but contested liability for June, July and August; and that the decision of the appeals referee was dated December 30, 1980, and received January 2, 1981. (The decision ruled in Weir's favor for June and July and in the department's favor for August.) The complaint went on to state that Weir had received no notice of implementation until January 16, 1981, and that the back food stamps owed her would be paid only in monthly installments which would commence around February 14, 1981, and end in May, 1981.

---

[3] The grounds were (1) that the judge's findings did not address the question of timeliness of implementation of food stamp appeal decisions, a matter that had been put in issue by the amended complaint filed April 27, 1978 (see note 2, *supra*); (2) that the judge failed to address the question of the timeliness of fair hearings which had been delayed by postponements, and (3) that "various facts in the Court's findings," not further specified, "are in error."

Weir, in her complaint, also sought certification as representative of a class defined as "those [f]ood [s]tamp applicants and recipients who have filed requests for administrative appeals on [f]ood [s]tamp issues and either have not had hearings scheduled or have not received final decisions on their appeals or have not had those decisions implemented within the time limits set out in the applicable state and federal regulations." The intervention motion stated that Weir's purpose was "to represent her own interests and those of the class in seeking amendment of, and, if deemed necessary, appealing the judgment which the court has entered against the class in this action."

The department opposed intervention by Weir, and on July 20, 1981, the judge denied both the plaintiff's motion to amend the judgment and the motion by Weir to intervene. No appeal was claimed by the plaintiff, who was still the designated representative of the plaintiff class. Weir filed a timely notice of appeal on September 18, 1981. See Mass.R.A.P. 4(a), 378 Mass. 928 (1979) (sixty-day appeal period where the Commonwealth or an officer or agency thereof is a party).

On October 6 and November 16, 1981, the plaintiff filed discovery motions aimed at establishing that, despite having failed to obtain favorable action from the court, the class had nevertheless "prevailed" for purposes of the motion for attorneys' fees under § 1988 by virtue of having prodded the department into reforming and speeding up its hearing and decision-making procedures in food-stamp appeals. The motions for discovery were effectively denied December 4, 1981. The motion for attorney's fees, never marked for hearing, was denied a year later, on December 23, 1982, "to complete [the] record."[4]

---

[4] On November 29, 1982, the plaintiff's counsel wrote a letter to the judge indicating that the unacted-on motion for attorney's fees under 42 U.S.C. § 1988 (1982) was posing an obstacle to the issuance of a notice of assembly of the record. The letter recalled the denial of the motion to compel discovery, stated that the denial, read in connection with the Commonwealth's stated reasons for opposing the motion, suggested that the judge may have taken the position that the plaintiffs were not entitled to such fees as matter of law, and asked that a case conference be scheduled "to determine the most expeditious method of proceeding with the fee motion." On December 23, 1982, the judge wrote on the motion for attorney's fees: "Motion never marked for hearing. Case under appeal. Motion denied without hearing to complete record."

On February 22, 1983 (the previous day having been a holiday), Weir filed a timely notice of appeal from the orders denying discovery and attorney's fees.[5]

The plaintiff did not appeal, and the department argues that no issue is properly before us on Weir's appeals other than the propriety of the order denying her motion to intervene. As the only appeals before us are Weir's, we begin by considering that contention.

We sketch the theme of the litigation before Weir filed her motion. The Federal Food Stamp Act, both as it read in 1975 when this action was commenced,[6] and as it was amended in 1977,[7] required a participating State to make provision (in its State plan) "for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of a state agency under any provision of its plan of operation as it affects the participation of such household in the food stamp program." A regulation promulgated by the Secretary of Agriculture in 1975 required the administering State agency to take ". . . prompt, definitive, and final administrative action within sixty days of [any request for a hearing]." 7 C.F.R. § 271.1(o) (9) (ii) (1976). That regulation did not make clear what was encompassed by the words "final administrative action," and the plaintiff's complaint, as originally drafted, was directed at the department's failure to render a decision within sixty days of the request for a hearing. In April, 1978, the plaintiff amended her complaint to allege that the department's duty under the Federal regulation was not merely to render a decision but to implement that decision within the specified sixty-day period.[8]

---

[5] That is to say, we assume that the order denying the discovery motions was not a final order, independently appealable, but, being ancillary to the motion for attorneys' fees, is before us for review on a timely appeal from the order denying such fees. The latter is an appealable order.

[6] 7 U.S.C. § 2019(e) (8) (1970, as amended in Supp. III 1973).

[7] 7 U.S.C. § 2020(e) (10) (1976, as amended in Supp. II 1978).

[8] The plaintiff had apparently filed an amended complaint in late 1975 raising the issue of timely implementation, but the record does not indicate that a motion for amendment was filed or allowed. In March, 1978, the department moved to strike the 1975 amended complaint, alleging that it

In October, 1978, the Federal regulations were revised to deal explicitly with time limits for both decision and implementation. In a system such as Massachusetts has, where the initial hearing is given at the State (rather than local) level, the regulations called for a maximum of sixty days from request for hearing to notification of decision, with an additional ten-day period for implementation. 7 C.F.R. § 273.15(c) (1979).[9] The federally mandated time standards being thus clarified, the question remained whether, and to what extent, the department was not in compliance.

Trial began in late December, 1979, and concentrated on four periods of time for which the department had attempted to amass comprehensive statistics: March, 1974, through September, 1975; November, 1976, through December, 1977; October, 1978, through March, 1979; and the month of October, 1979. Despite the voluminous statistics, the picture that emerged was unclear. There were many complicating factors. An example was postponements. In large numbers of cases the applicant for the fair hearing either sought a postponement or didn't show up at the time of the hearing. This would necessitate a rescheduling. The Federal regulations allowed postponements of up to thirty days and extended the times for decision and implementation by the length of the delay caused by a postponement sought by the applicant.[10] The statistical records did not adequately depict the timeliness of decisions under the extended time standards in postponed cases. The

---

had not received a copy or even heard (prior to 1978) of its existence. After that motion was denied, the second amended complaint mentioned in n.2 was allowed by agreement.

By 1978, some courts had held that the 1975 regulation required not merely decision but implementation within the sixty-day period. See, e.g., *Mikel* v. *Reser*, 440 F.Supp. 1226, 1230 (E.D. Mo. 1977); *Lambus* v. *Walsh*, 448 F. Supp. 240, 243-244 (W.D. Mo. 1978). In May, 1978, the Department of Agriculture proposed a regulation that would have mandated implementation within sixty days. See 43 Fed. Reg. 18897-18898, and 18933 (1978). The regulation was not adopted in the form proposed, but, instead, in a form described in the text.

[9] There was no separately specified limit on the time for implementation if the total time for decision and implementation was sixty days or less.

[10] 7 C.F.R. § 273.15(c) (4) (1979).

judge seems to have treated postponed cases as instances of compliance with the time standards, thus arriving systematically at higher over-all rates of compliance than the plaintiff felt to be justified. Other complaints involved the statistical handling of withdrawn or abandoned appeals and whether it was proper, in some instances, to minimize the seriousness of nontimeliness in cases where benefits were continued pending decision or the decision went against the applicant. The plaintiff, in addition to questioning the validity of the judge's finding that the department, by the time of trial, had come into substantial compliance with the timeliness regulations,[11] also questioned the legal effect of such a finding, arguing that the Federal regulations required total compliance.[12] Moreover, the judge's findings failed to deal with the timeliness of implementation, as distinguished from timeliness of decisionmaking.

Suffice it to say, without deciding the merits, that several of the plaintiff's complaints had enough substance to warrant appellate review and to raise the issue of inadequate representation of the plaintiff class by a representative who failed to take an appeal. Compare *Wolpe* v. *Poretsky,* 144 F.2d 505, 507-508 (D.C. Cir.), cert. denied, 323 U.S. 777 (1944); *Pellegrino* v. *Nesbit,* 203 F.2d 463, 465-466 (9th Cir. 1953); *Gonzales* v. *Cassidy,* 474 F.2d 67, 76 (5th Cir. 1973). See also *Cascade Natural Gas Corp.* v. *El Paso Natural Gas Corp.,*

---

[11] The judge found that by October, 1979, the department was rendering a decision within sixty days of the request for hearing in ninety-four percent of the cases. Weir argues that that figure is based on misinterpretation of the statistical data and that the correct figure is in the order of eighty-eight percent. Weir concedes, however, that the department's compliance with the sixty-day requirement had vastly improved from what it was at earlier times between 1975 and 1979 and, indeed, predicates her argument for attorneys' fees on that improvement.

[12] Prior to 1977 the Food Stamp Act called for monitoring by the Secretary of Agriculture on the basis of a "substantial compliance" standard, 7 U.S.C. § 2019 (f) (1976). Extensive revisions to the Act in 1977 removed the reference to "substantial compliance," see 7 U.S.C. § 2020 (g) (1976, as amended in Supp. II 1978), P.L. 95-113, Title XIII, § 1301, 91 Stat. 969. In 1980 Congress inserted a "good cause" exception, P.L. 96-249, § 120, 94 Stat. 362, which has been defined by regulation (7 C.F.R. § 276.6[a] [1981]), in a manner that cannot be read to sanction chronic delay caused by routine budgetary or staffing deficiencies.

386 U.S. 129, 135-136 (1967); *United States* v. *American Tel. & Tel. Co.*, 642 F.2d 1285, 1293 & n.38 (D.C. Cir. 1980).

The *Wolpe* and *Pellegrino* cases held that, in circumstances analogous to those in the present case, one whose interests are represented by a party who fails to take an appeal from an adverse judgment is entitled as of right to intervene. See Mass.R.Civ.P. 24(a) (2), 365 Mass. 769-770 (1974). Here, the Attorney General, representing the department, did not oppose Weir's intervention motion for the limited purpose of prosecuting an appeal from the judgment. Indeed, the judge expressed his understanding that Weir, as a member of the class,[13] was already a party and was entitled to file a notice of appeal. In light of his comments from the bench, it is inferable that his later denial of the motion was based on a ruling that, insofar as it related to the taking of the appeal, the motion was superfluous.

Reading together the motion to intervene, directed in part to the taking of an appeal, and the "intervenor's complaint," which sought the certification of Weir as representative of a class described in much the same terms as the previously cer- tified class, we think their import should be understood as a motion to substitute Weir for the plaintiff as the class represen- tative in light of the plaintiff's disinterest in pursuing the appeal. In the circumstances such a motion should have been allowed and doubtless would have been allowed if the concept of sub- stitution had been more clearly expressed. We think we carry out the judge's intention by treating the case as properly before us on the appeal of Weir as representative of the class.

There was no error in denying the motion for intervention insofar as it was the vehicle for putting Weir's own complaint before the court. The processing delays which made Weir a member of the plaintiff class[14] had not occurred until after the

---

[13] As to Weir's membership in the class, see note 14, *infra*.

[14] It seems to have been conceded by the Attorney General, and accepted by the judge, that Weir became a member of the plaintiff class and was, thus, eligible for designation as a class representative. See *Sosna* v. *Iowa*, 419 U.S. 393, 403 (1975) ("A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the [trial] court"); *Gerstein* v. *Pugh*, 420 U.S. 103, 110 n.11 (1975). See also

entry of judgment on the original plaintiff's (second amended) complaint. The operative facts in Weir's case related to a period of time (August, 1980, to February, 1981) after those which had been the subject of the trial. The judge did not err in denying the motion on the ground that Weir's complaint "would amount to new litigation." Whether to reopen the case to determine if equitable relief was called for in light of events which occurred after the close of the trial was a question which lay within the judge's discretion.

Weir's appeal, while technically bringing before us the question of the correctness of the 1980 judgment, is overshadowed by much the same considerations that led the judge to deny the motion to intervene. The plaintiff class sought equitable relief only: their complaint sought no damages for past wrongs, but, rather, injunctive relief forcing the department, prospectively, to speed up its appellate and implementation processes.

*United States Parole Commn.* v. *Geraghty,* 445 U.S. 388, 397-401 (1980); *Wolf* v. *Commissioner of Public Welfare,* 367 Mass. 293, 297-300 (1975). At the time certification was given in 1975, the class was defined as food-stamp applicants who had applied for fair hearings and had not received a decision within the Federal sixty-day guideline. The facts alleged by Weir indicate that she did receive a decision within that guideline (taking into account the delays sought by her counsel) but failed to receive food stamps within ten days thereafter as mandated by the new, 1978 regulations. The complaint had been amended in 1978 (but prior to the 1978 regulations) to raise the question of timely implementation. (We note that no showing was made that the original class representative had suffered a delay in implementation, as opposed to delay in obtaining a decision, and it is questionable that she was an appropriate representative to complain of implementation delays after the separate time standards for decision and implementation were adopted in 1978.) Treating the allowance of the second amended complaint as having, in effect, altered the definition of the class, we can avoid raising for the first time on appeal the issue of Weir's standing. In this connection we note that it may not invariably be improper to delay defining that class with precision until the time of judgment. See, e.g., *Bing* v. *Roadway Exp., Inc.,* 485 F.2d 441, 445-448 (5th Cir. 1973); 3B Moore's, Federal Practice par. 23.04[1], at 23-114 and n.11, 23-115 — 23-119 (1978). Contrast *Davis* v. *Romney,* 490 F.2d 1360, 1366 (3d Cir. 1974). The Massachusetts class action rule, Mass.R.Civ.P. 23 , 365 Mass. 767 (1974), may be more conducive than its Federal counterpart to vagueness in class definition by having omitted the portions of the Federal rule that call for certification as a class action as soon as practicable after commencement of the action and notification to members of the class. See Fed.R.Civ.P. 23(c) (1) and (2). See also *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 700 n. 16 (1975); *Spence* v. *Reeder,* 382 Mass. 398, 408 n.12 (1981).

As no injunction was entered in 1980, the question the appeal puts before us is whether one should enter now. Manifestly, the record before us would furnish no basis for such an action. It deals with the department's practices in a time period (1974-1979) that ended over six years ago. The department acknowledges that during much of that period it was hopelessly out of compliance with the Federal guidelines.[15] The department maintains that, as the judge found, it had worked its way up to substantial compliance by October, 1979. The plaintiff class disagrees with the characterization (while acknowledging vast improvement). It would serve no purposes to resolve that question now. An injunction could not properly be entered in 1985 on the basis of 1979 practices — particularly upon a record that indicates that the department was striving with substantial success for better compliance. Past violations will not support injunctive relief without a showing that future violations are probable. See *Sullivan* v. *Secretary of the Commonwealth*, 233 Mass. 543, 545-546 (1919); *Hubrite Informal Frocks, Inc.* v. *Kramer*, 297 Mass. 530, 533-535 (1937); *Cole* v. *Chief of Police of Fall River*, 312 Mass. 523, 525 (1942); *Indiana Employment Security Div.* v. *Burney*, 409 U.S. 540, 541-542 (1973); *Fusari* v. *Steinberg*, 419 U.S. 379, 387-390 (1975). An injunction will not issue simply because it will do no harm.

---

[15] The delays in decisionmaking and implementation were shown to be greatest in the periods from late 1977 to mid-1979. The passage of the Food Stamp Act of 1977, P.L. 95-113, and the implementing regulations, 43 Fed. Reg. 47918 (1979), established new eligibility standards which forced the department to redetermine eligibility for every recipient household. The wholesale redeterminations caused fair hearing requests to rise from an average of 200 per month to more than 500 per month, against a modest and belated increase in the budget provision for personnel assigned to appeals. The Department of Agriculture, commenting in the spring of 1978 on the proposed regulations, recognized congressional concerns that the decisionmaking and implementation periods were excessive but declined to shorten them, recognizing "that upon implementation of these new regulations States will have the tremendous task of redetermining eligibility or basis of issuance of every household. Also, States are likely to encounter an increase in fair hearing requests as a result of reductions or terminations of benefits resulting from implementation of the new eligibility criteria. Thus, blanket acceleration of fair hearing procedures at this time would be difficult." 43 Fed. Reg. 18897 (1978).

*Hubrite Informal Frocks, Inc.* v. *Kramer, supra* at 534. Rather, it must be grounded in a present showing that future unlawful conduct is probable. *Vegelahn* v. *Guntner*, 167 Mass. 92, 104 (1896) (where Holmes, J., dissenting, stated that "an injunction is not granted except with reference to what there is reason to expect in its absence"). The present record is years too stale to warrant an inference that the department is not now in compliance.

The same considerations apply to the plaintiffs' request for declaratory relief. Whether the department was or was not in substantial compliance with the Federal guidelines by October, 1979, except possibly for its bearing on the question of an attorney's fee, is a matter of no present concern to any party. If there was, at the outset of this litigation ten years ago, a controversy between the parties as to the scope of the sixty-day time period for "definitive, and final administrative action" (i.e., whether not only a decision, but also implementation, was required within the specified period), that controversy was rendered moot in 1978 when the Department of Agriculture promulgated new regulations separately governing decision and implementation.

It would be possible, in these circumstances, for us to vacate the judgment and remand for findings concerning the department's current state of compliance with the Federal time standards. Such a remand would necessitate an entire new trial, nothing of the earlier trial being at all relevant to the question of present compliance. Worse, it would be, if not indispensable, at least greatly desirable, to recruit a new plaintiff to represent the class, on the basis of a third amended complaint by one whose brush with the food stamp hearings process was more recent than five years ago. To remand the case for updating would be, in essence, to mandate the commencement of an entirely new action, involving entirely new people, having nothing in common with the present action but a docket number, and quite possibly desired by no person except the survivors of this venerable litigation. In similar circumstances at least one court has exercised it discretion to affirm a judgment dismissing a class action and has suggested that any present com-

plaints be made the subject of a new class action. See *Bradley* v. *Housing Authy. of Kansas City*, 512 F.2d 626, 629 (8th Cir. 1975). Compare *Satterwhite* v. *Greenville*, 578 F.2d 987, 996-997 (5th Cir. 1978), vacated and remanded, 445 U.S. 940 (1980), *S.C.*, 634 F.2d 231 (1981). We shall follow the same course, knowing that we do no injustice to a plaintiff class that sought only prospective relief and remains in a position to seek such relief if the current practices of the department warrant it.

The question remains of the propriety of the order denying an attorney's fee. The plaintiff class is not entitled to an attorney's fee under 42 U.S.C. § 1988 (1976) unless it is found to be a "prevailing" party. *Porter* v. *Treasurer & Collector of Taxes of Worcester*, 385 Mass. 335, 339-342 (1982). *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 821-822 (1985). It predicates its motion for attorney's fees on a claim that it prevailed in the practical sense of having forced the department, under the spur of this action, to speed its procedures to comply more nearly with the Federal standards. The claim is one of fact which, if proven, would entitle the class to a reasonable award for counsel fees. See *Nadeau* v. *Helgemoe*, 581 F.2d 275, 279-281 (1st Cir. 1978); *Coalition for Basic Human Needs* v. *King*, 691 F.2d 597, 599 (1st Cir. 1982); *Ross* v. *Horn*, 598 F.2d 1312, 1322 (3d Cir. 1979), cert. denied, 448 U.S. 906 (1980); *NAACP* v. *Wilmington Medical Center, Inc.*, 689 F.2d 1161, 1169 (3d Cir. 1982), cert. denied, 460 U.S. 1052 (1983); *Hennigan* v. *Ouachita Parish Sch. Bd.*, 749 F.2d 1148, 1151-1152 (5th Cir. 1985); *Johnston* v. *Jago*, 691 F.2d 283, 286 (6th Cir. 1982); *Fields* v. *Tarpon Springs*, 721 F.2d 318 (11th Cir. 1983).

To prove the claim the then class representative sought to compel discovery of documents in the department's possession which bore on the relationship between the pendency of the action and the acceleration of the appellate and implementation processes. The reason for denial of the motion to compel was not articulated, but it is possible to draw inferences from the reasons stated by the department in opposing the motion. One reason, that the documents were privileged (either as falling

within the lawyer-client privilege or within executive privilege), might have been reason for denial of some documents falling within the description of those sought but not all. Typically, a claim of privilege must be specific to the particular document. *United States* v. *O'Neill*, 619 F.2d 222, 226-227 (3d Cir. 1980). *United States* v. *Reserve Mining Co.*, 412 F.Supp. 705, 711 (D. Minn. 1976), aff'd and remanded on other grounds, 543 F.2d 1210 (8th Cir. 1976). *United States* v. *Exxon Corp.*, 87 F.R.D. 624, 637 (D.C. Cir. 1980). Compare *Attorney Gen.* v. *School Comm. of Northampton*, 375 Mass. 127, 132 (1978); *Attorney Gen.* v. *Assistant Commr. of the Real Property Dept. of Boston*, 380 Mass. 623, 627-628 (1980). See generally *Bryer* v. *P.S. Thorsen Co.*, 327 Mass. 684, 687 (1951); McCormick, Evidence § 110 (3d ed. 1984). It is highly unlikely that the unparticularized assertion of privilege was the reason for the denial.

The second reason assigned was that the class had not "prevailed" and thus was not entitled to an attorney's fee, the thought presumably being that the class had not succeeded in obtaining any form of judicial relief. The cases cited above (*Nadeau* v. *Helgemoe*, etc.) have made clear that a plaintiff can "prevail" without winning judicial relief, if by his suit he succeeeds in winning from a defendant a substantial part of what he has sued for.

A final reason for the department's opposition to the motion to compel was a contention that the motion for an attorney's fee was advanced too late, that the judgment had become final. In *White* v. *New Hampshire Dept. of Employment Security*, 629 F.2d 697 (1st Cir. 1980), it was held that a postjudgment motion for attorney's fees was in the nature of a motion under Fed.R.Civ.P. 59 to alter judgment and was not timely if filed more than ten days after judgment. In *Draper* v. *Town Clerk of Greenfield*, 384 Mass. 444 (1981), cert. denied, 456 U.S. 947 (1982), the Supreme Judicial Court did not have to decide if such a motion, filed after the tenth day, was timely, because the judge had entered a form of "judgment" (so-called) which expressly held open the question of the plaintiffs' entitlement to attorney's fees under § 1988. The focus of the department's

contention in this case was that the judgment here, unlike that in the *Draper* case, had not reserved the question of attorney's fees. The contention is meritless for two reasons: first, the motion was, in fact, filed within ten days of the entry of judgment and thus was timely if treated as a motion under Mass.R.Civ.P. 59, 365 Mass. 827 (1974); and second (although the department could not know this when it filed its opposition), the *White* case was later to be overruled by the Supreme Court (455 U.S. 445, 453-455 [1982]), which held that the question of attorney's fees under § 1988 was a collateral matter, not inherently within the scope of the judgment in the underlying action, and not subject to any explicit time limit governing its filing. (The Court suggested, at 454, nn.16 & 17, and more explicitly through Blackmun, J., concurring, at 456, that time limits could and, in the interest of finality, should be established by local rules.) We note also that the complaint in this action, unlike that in *White* (see 629 F.2d 698-699), included a prayer for an award of attorney's fees.

None of the reasons given for denial of the discovery motion is persuasive, and we hold that it was error to deny the motion. The plaintiff class should be given an opportunity to make a factual showing that this action was responsible in some substantial degree for the department's coming more closely into compliance with the Federal time standards. If, on remand, the department should wish to advance a claim of privilege with respect to any of the documents called for by the motion, it may raise that claim by a particularized motion for a protective order.

The judgment is affirmed. The order denying the motion to intervene is affirmed in part and denied in part, as explained in the foregoing opinion. The appeal from the order denying the motion to amend the judgment, not separately argued, is treated as waived. The order denying the motion to compel discovery is reversed, and the motion is to be allowed, subject to later modification by way of protective order if need therefor is shown. The order denying the motion for an attorney's fee is reversed, and the case is remanded to the Superior Court for further proceedings with respect to that motion. The inter-

vener Weir, rather than the original plaintiff Cleary, is to be treated as the class representative for purposes of those proceedings, subject to further substitution if necessary.

*So ordered.*