Toomey, J.
On December 20, 1999, these parties were before the court on the motion of plaintiff insurance brokers, Stephen F. Eldridge (“Eldridge”) and Cheryl Eberting (“Eberting”), for class certification in their action against defendants, Provident Companies (“Provident”), The Paul Revere Corporation (“Paul Revere”) and others (collectively, “defendants”).
On January 1, 1995, Paul Revere had reduced the commissions theretofore paid to its brokers when policyholders exercised riders to increase their disability coverage (“rider commissions”). In their original complaint, plaintiffs allege that the reduction in rider commissions violated both their individual Broker Agreements (“Agreements”) with Paul Revere and their rights under G.L.c. 93A, the Massachusetts Consumer Protection Act. Plaintiffs seek now to certify a nationwide class of several thousand Paul Revere brokers, many of whom live outside the Commonwealth of Massachusetts.
For the following reasons, plaintiffs’ motion for nationwide class certification will be ALLOWED.
BACKGROUND
Prior to 1991, Paul Revere paid each broker a 55% first year commission on every new disability policy the broker sold and a 5% commission for renewal of each policy during the second through tenth years of the policy’s term (“renewal commissions”). In 1991, the base rate for first year commissions was reduced to 50%; the annual renewal commissions remained at 5%.
An insured who purchased a disability policy also had the right to exercise certain riders designed to increase the amount of disability coverage in subsequent years.[3] Prior to 1995, Paul Revere did not include rider commissions as part of its written commission schedule. The company did, however, treat such riders as new business, paying brokers a first-year commission for the year in which the rider was exercised, followed by 5% renewal commissions for the next nine years. Thus, brokers received first-year rider commissions of 55% prior to January 1, 1991 and 50% from January 1, 1991 to January 1, 1995.
On January 1, 1995, Paul Revere revised its commission schedule. The new schedule included disability rider commissions, providing a flat base commission of 10% for the first ten years after the rider was exercised. This 10% replaced the commissions Paul Revere had paid brokers for disability riders prior to 1991 and 1995. Thus, instead of receiving a commission of 50 or 55% the first year the rider was exercised, and 5% for the next nine years, after 1995 brokers received 10% for the first year and for each of the following nine years the rider remained in effect, even if the original disability policy had been issued prior to 1995.
Plaintiffs, who are not residents of Massachusetts, argue that this reduction in their commissions violated their Agreements with Paul Revere as well as G.L.c. 93A, which prohibits unfair or deceptive business practices. The parties agree that the Agreements prevented Paul Revere from reducing commissions “under any schedule” and from reducing commissions on “in-force” policies. They dispute, however, the proper interpretation of that contract language.
*414 Paul Revere contends that the language of the Agreements did not prohibit it from reducing commissions on disability riders because rider commissions were not explicitly included in any commission schedule prior to 1995 and because the exercise of new riders on existing policies could not be considered “in-force” policies.
The plaintiffs respond that Paul Revere included rider commissions under its commission schedule prior to 1995 by consistently treating the exercise of such riders as new business. They also argue that, because the riders increased the amount of coverage on existing disability policies, the riders constituted commissions on “in-force” policies. The brokers maintain, therefore, that their commissions on these disability riders were protected under the language of the Agreements.
This case centers on two major issues, to wit, the definition of “in-force” policies and the question of whether Paul Revere, prior to 1995, impliedly included rider commissions under its commission schedule. The proceedings on plaintiffs’ complaint will likely focus on those issues and the suit will turn on the resolution of the parties’ dispute on those points.
Plaintiffs now move for nationwide class certification of several thousand Paul Revere brokers pursuant to Mass.R.Civ.P. 23(a) and (b) and G.L.c. 93A, §11. Defendants respond that plaintiffs are not entitled to nationwide certification because the proposed action does not satisfy due process requirements for the certification of out-of-state plaintiffs and because individual issues predominate. At bottom, defendants maintain that plaintiffs’ efforts to obtain class certification are fatally flawed by the absence of an “opt-out” provision in the Massachusetts procedure and by the need for individualized attention to the circumstances of each prospective class member’s claim.
DISCUSSION
I. NATIONWIDE CERTIFICATION
The United States Supreme Court has addressed the issue of whether a state may certify a nationwide class of plaintiffs when that state does not permit prospective plaintiffs to “opt out” of the proceedings. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). Where a state wishes to bind an absent plaintiff in an action for money damages, but does not have minimum contacts with that plaintiff, the state must provide the plaintiff with minimal due process protections, including notice, an opportunity to be heard, and the opportunity to remove oneself from the class. Id. at 812.[4]
Mass.R.Civ.P. 23(b), unlike its federal counterpart, does not afford a potential class member the opportunity to opt out of a class action. Defendants argue, therefore, that Shutts precludes a Massachusetts court from exercising personal jurisdiction over a nationwide class of plaintiffs. Id.
There are some situations, however, in which the law provides that an “opt-out” provision is not the sine qua non for certification of a nationwide class. The opportunity to opt out may not be required in those instances where a state can establish personal jurisdiction over all potential plaintiffs or where the quest for equitable relief predominates over the pursuit of money damages. Such is the case at bar.
A. Personal Jurisdiction
Where a state can establish personal jurisdiction over all potential plaintiffs, an opt-out provision is not essential to class certification if the other requirements of certification are satisfied. See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 292 [2d Cir. 1992] (“Shutts mandates that a plaintiff be permitted to opt out of a proposed class when the court does not have personal jurisdiction over the plaintiff’).
At bar, plaintiffs contend that Massachusetts has established sufficient minimum contacts with all potential class members — thousands of brokers from many different states — to justify an exercise of personal jurisdiction by Massachusetts courts. Plaintiffs base this assertion on the Agreements executed between the individual brokers and Paul Revere and by the parties’ performance of those Agreements. The brokers knew both that they were signing contracts to act as sales representatives of an insurance company headquartered in Massachusetts and that they received their commissions from the Massachusetts office. Plaintiffs argue, therefore, that the brokers purposefully availed themselves of the privilege of doing business in Massachusetts, knowingly received income from a Massachusetts company and participated in the economic life of the state by selling policies for and contributing to the profits of a Massachusetts company.
Defendants respond that the brokers did not have minimum contacts with Massachusetts because they were not employees of Paul Revere, because they were recruited by Paul Revere field offices in their respective states, and because they signed all insurance contracts in their respective states, relying on the field offices to forward the policies to Massachusetts. This court finds that plaintiffs have the better of the argument; that is, that the potential members’ relationship with Massachusetts constituted the requisite sufficient minimum contacts. See International Shoe Company v. Washington, 326 U.S. 310 (1945); Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1559 (3rd Cir. 1994) (specific jurisdiction requires at a minimum that a party be shown to have committed at least one act in the relevant forum which is substantially related to the claim being adjudicated).
There has been a lively debate as to whether Shutts requires the due process protections of notice and a right to opt out in situations where, as here, all potential members have minimum contacts with the forum state. Some observers have interpreted Shutts *415 to suggest that notice and the right to opt out are not required where, as at bar, the state enjoys minimum contacts. For example, “where the state has satisfied the more stringent minimum contacts requirements as to plaintiff class members ... it is not clear that an opt-out provision is necessary.” Wilton, Massachusetts State Court Class Actions, 72 Mass. Law Review 10, 15 (Spring 1987).
Wilton notes, however, that, even where the state has minimum contacts with all potential plaintiffs, the Constitution may require “notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections.” Id., quoting Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 314 (1950). See also Grimes v. Vitalink Communications Corp., supra, at 1560 (due process protections required for out-of-state plaintiffs are significantly lower than those for defendants because there are inherent protections built into the class action device). Significantly, the Grimes court held that due process requirements were satisfied by providing “notice plus an opportunity to be heard and participate in the litigation." Id. Thus, we are not constitutionally compelled to reject certification merely because of the absence of an “opt-out” provision in Mass.R.Civ.P. 23(b). Other due process devices, such as notice and the opportunity to be heard, may suffice.
At bar, plaintiffs have made a G.L.c. 93A claim. That statute provides that, in those situations in which a person brings an action “on behalf of himself and . . . similarly injured and situated persons, the court shall require that notice of such action be given to unnamed petitioners in the most effective practicable manner.” G.L.c. 93A, §9(2) (emphasis added). Similarly, G.L.c. 93A, §11 mandates written notice to the unnamed claimants. Thus, should plaintiffs satisfy the notice requirement of G.L.c. 93A, they will also likely have satisfied the due process preconditions to certification to which Mullane and Grimes have alluded. The only remaining issue, therefore, is whether, given the harmony between the notice mandate of Massachusetts law and due process demands, the lack of an opt-out provision bars, in the circumstances of the instant case, nationwide certification of a class in an action brought in Massachusetts.
B. Equitable Relief
Even if a state cannot claim sufficient minimum contacts to exercise personal jurisdiction over all potential plaintiffs, the absence of an opt-out provision may not bar certification of a nationwide class where a suit seeks predominantly equitable relief. In Shutts, the United States Supreme Court noted that its decision was
limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominantly for money judgments. We intimate no view concerning other types of class actions, such as those seeking equitable relief.
Phillips v. Shutts, supra, at 810, fn3 (emphasis added). In post -Shutts decisions, where the relief requested was primarily equitable, some jurisdictions have allowed certification of a nationwide class despite the absence of an opt-out provision. See, for example, Day v. Nlo, 851 F.Supp. 869, 885 (S.D. Ohio 1994) (in cases seeking primarily equitable relief, opting out is generally not reasonable because “plaintiff-by-plaintiff in-junctive relief is not practical, particularly for the defendant”).
At bar, defendants argue that money damages predominate because plaintiffs’ action seeks monetary relief. It is, of course, true that, in some cases where an action purports to seek injunctive or declaratory relief, courts have indeed held that monetary relief is predominate. See Allison v. Citgo Petroleum Corp., 151 F.3rd 402, 415. (5th Cir. 1998) (underlying premise for injunctive relief begins to break down when class seeks to recover monetary relief based on individual injuries).
But, if the monetary relief is secondary or “incidental” to the requested injunctive or declaratory relief, then the equitable essence ought to control.
In Allison, plaintiffs sought to certify a nationwide class in an action alleging that Citgo engaged in class-wide racial discrimination with respect to general hiring, promotion, compensation and training policies at a Louisiana manufacturing facility. Id. at 407. The court held that, although the complaint sought injunctive and declaratory relief, class certification was not appropriate because the plaintiffs’ claims for “compensatory and punitive damages required particularly individualized proof of injury.” Id. at 416. Thus, where the monetary relief being sought is less of a group remedy and “depends more on the varying circumstances and merits of each potential class member’s case,” the monetary relief will be held to predominate. Id. at 413. Allison also spoke to the circumstances where monetary damages would not predominate, that is, where monetary damages were merely incidental to the equitable relief claimed by the plaintiffs. Allison defined incidental damages as “those to which class members automatically would be entitled once liability to the class ... as a whole is established.” Id. Further, incidental remedy was described by Allison as relief which is “capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member’s circumstances.” Id. In such circumstances, Allison clearly suggests that class certification should not fail merely because incidental damages were included in plaintiffs’ demand for judgment.
Defendants note that some Massachusetts courts have refused to certify a nationwide class because of the absence of an opt-out provision. See Nark v. Siegel, *416 Superior Court Civil Action No. 94-994 (Norfolk, September 30, 1999) (Brady, J.) (court cannot exercise personal jurisdiction over a nationwide class of plaintiffs because Mass.R.Civ.P. 23 does not provide potential class members the opportunity to “opt out”); see also Qual-Craft v. Realworld Corp., Superior Court Civil Action No. 98-1186, 10 Mass. L. Rptr. 124 (Norfolk, February 24, 1999) (Connolly, J.) (proposed nationwide class does not satisfy the due process requirements of Shutts because of the absence of an opt-out provision).
The Nark and Qual-Craft decisions, however, rest on factual foundations that are readily distinguishable from the case at bar. In both of the noted cases, the demand for money damages predominated because the plaintiffs’ damage claims depended on discrete findings with respect to the individual circumstances of each plaintiffs situation. In a recent case, this court (Brassard, J.) recognized that Nark focused on “individual issues arising out of different contracts, damages and issues of misrepresentation and reliance.” See Weld v. CVS Pharmacy, Superior Court Civil Action #98-0897, 11 Mass. L. Rptr. 21 (Suffolk, November 1999). Although there were sufficient common issues of law and fact to certify a class within Massachusetts, the Weld court found that equitable relief did not predominate because the damages claimed by plaintiffs would not flow automatically to each class member from the claims underlying the injunctive relief. Id. Thus, in Nark, Qual-Craft and Weld, nationwide class certification failed because the individuality of the potential members’ circumstances was regnant, money damages predominated, and the equitable character of plaintiffs’ demand was of subordinate interest.
In contrast, at bar, plaintiffs seek a group-wide remedy that depends on interpretation of the wording in standard form Agreements signed by all potential class members. “Claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action.” See Kleiner v. First Natl. Bank of Atlanta, 97 F.R.D. 683 (1983). The parties dispute whether the language of the Agreements and the conduct of the defendants prevented Paul Revere from decreasing rider commissions on existing disability policies. In resolving this dispute, there will be no occasion to determine the circumstances of each individual plaintiff. The instant plaintiffs do seek monetary damages, but those damages will be derived directly from the interpretation of the Agreements and will thus be capable of uniform computation by objective standards. Once it has been determined whether pre-1995 commission rates apply to disability rider commissions exercised after 1995, the determination of damages incurred by each plaintiff may be computed using simple arithmetic. Thus, the damages sought in this action are “those to which class members automatically would be entitled once liability to the class . . . as a whole is established.” See Allison v. Citgo Petroleum Corp., supra, 151 F.3rd at 415. Where damages will flow automatically to the class as a whole from the claims underlying the in-junctive relief, the claim may properly be characterized as one for equitable relief. Id. As such, the fact that money damages have also been sought presents no obstacle to the class certification sought at bar.
II. THE RULE AND THE STATUTE
The plaintiffs seek to certify as a nationwide class all Paul Revere brokers who had their first-year disability rider commissions reduced in January 1995. Mass.R.Civ.P. 23(a) requires a plaintiff seeking class certification to show that:
1) The class is so numerous that joinder of all members is impracticable;
2) There are questions of law or fact common to the class;
3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4) The representative parties will fairly and adequately protect the interests of the class.
In addition, Mass.R.Civ.P. 23(b) provides that a class may be certified only if:
The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
A class action seeking G.L.c. 93A relief is governed by the requirements of Mass.R.Civ.P. 23. See Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 604 (1985). At bar, plaintiffs argue that they are entitled to class certification because they have satisfied the prerequisites of both Rule 23(a) and (b) and G.L.c. 93A. Their argument is sound.
A. Numerosity
The four-part litmus, established by Mass.R.Civ.P. 23(a) to test the appropriateness of certification in a given case, commences with an assessment of numerosity. At bar, the parties agree that there are several thousand potential plaintiffs in the proposed class. The Rule 23(a) numerosity requirement is satisfied by both the great number of prospective members and the fact that those members do not reside in the same geographic area. The circumstance that the thousands of potential members live in a multitude of different states establishes that joinder of individual plaintiffs is impracticable. See Kirby v. Cullinet, 116 F.R.D. 303, 306 (D.Mass. 1987). Where joinder is impracticable, a class of 50 or 60 has been found sufficiently large to satisfy the numerosity requirement. See Holton v. L.F. Rothschild, 118 F.R.D. 280, 282 (D.Mass. 1987).
*417 B.Common Issues of Law and Fact
To establish commonality, plaintiffs seeking certification of the class must show that “all the persons whom they profess to represent have a common interest in the subject matter of the suit and a right and interest to ask for the same relief against the defendants.” See Spear v. H.V. Greene Co., 246 Mass. 258, 266 (1923). The interest of each member of the class does not have to be identical in all respects, but the “interest must arise out of a common relationship to a definite wrong.” Id.
Defendants argue that there are no common issues of law and fact because there are individualized questions of fact that must be determined for each potential plaintiff. The focus of the suit, however, is not on each prospective member’s individual relationship with the defendants, but on the improper behavior of the defendants toward the plaintiffs as a group. Day v. Nlo, supra, at 884. The gravamen of plaintiffs’ complaint is that defendants’ reduction in rider commissions constituted a single, general course of conduct that unlawfully breached the Agreements signed by all the potential plaintiffs. Proof of the alleged misconduct does not depend on the conduct of a particular broker or a particular company representative. The commonality requirement is generally satisfied where questions of fact and law concern standardized conduct by defendants toward all or most of the proposed class members. See Duhaime v. John Hancock Mutual Life Ins. Co., 177 F.R.D. 54, 62 (D.Mass. 1997).
C.Typicality
To satisfy the typicality requirement, a class representative must be a member of the class he purports to represent. Cleary v. Commissioner of Public Welfare, 21 Mass.App.Ct. 140, 147 (1985). At bar, plaintiffs are members of an identifiable group — to wit, the brokers who signed standard Agreements with Paul Revere and had their rider commissions reduced — and pursue relief of the same sort that all members may be expected to demand. Thus, plaintiffs present a breach of contract claim that is typical of the class they seek to represent.
D.Fair and Adequate Representation
For a plaintiff to be considered a fair and adequate representative of the class, the plaintiff must have 1) no potential conflicts with the proposed class members and 2) qualified, experienced counsel able to conduct vigorously the proposed litigation. See Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).
Here, where the claims of all potential plaintiffs depend wholly on the interpretation of a standard contract, there is no likelihood that plaintiffs’ interests are antagonistic to those of other class members. Furthermore, counsel for the prospective class are experienced and qualified in class litigation and, as defendants conceded in oral argument upon the instant motion, there is no suggestion that said counsel will not fairly and adequately protect the interests of the class.
E.Common Issues Predominate and a Class Action is Superior to Other Forms of Adjudication
We are also instructed by Mass.R.Civ.P. 23(b) that, in order to certify a class, plaintiffs must show that common questions of law or fact predominate over questions affecting only individual members and that the class action is superior to other available means of adjudication. See Fletcher, 394 Mass. at 601. As described in the discussion of commonality, supra, plaintiffs’ claims at bar allege a common course of conduct on the part of defendants that resulted in damage to the plaintiffs. See Duhaime, 177 F.R.D. at 62.
Where resolution of a class action may result in “benefits to the large number of class members, many of whose claims are so small that their size does not provide the impetus to bring individual actions,” a class action has been found to be the preferred method of adjudication. See M.Berenson Co. v. Faneuil Hall Marketplace, 100 F.R.D. 468, 471 (D.Mass. 1985). Similarly, a class action has been found appropriate to “vindicate the rights of individuals who otherwise might not consider it worth the trouble to embark on litigation in which the optimum result might be more than consumed by the cost.” Guaranty National Bank v. Roper, 445 U.S. 326, 338 (1980). At bar, the benefits reasonably to be anticipated by a class action and the advancement of the interests of those who might be intimidated by the prospect of individualized litigation are persuasive that certification of the class will result in a course of justice superior to that which is likely to emanate from other forms of adjudication.
CONCLUSION
Plaintiffs have demonstrated that the potential members possess minimum contacts with Massachusetts. Plaintiffs’ action may properly be characterized as a claim for equitable relief in which money damages do not predominate. Plaintiffs have satisfied the requirements of constitutional due process and the demands of Mass.R.Civ.P. 23(a) and (b). Plaintiffs are, therefore, entitled to nationwide certification as a class.
ORDER
For the foregoing reasons, it is hereby ORDERED that broker plaintiffs’ motion for certification as a nationwide class is ALLOWED.

Three forms of riders are at issue in this action. Automatic Increase in Benefits ("AIBs”) automatically increased *418 the amount of disability insurance at predetermined levels unless the policyholder elected not to accept the increased coverage. Future Income Options (“FIOs") allowed policyholders to increase coverage at designated intervals after proving that their income had increased. Guaranteed Coverage Increases (“GCIs”) allowed employers administering insurance policies that covered multiple employees to increase coverage for such individuals.

In Shutts, a Kansas court was allowed to exercise personal jurisdiction over a class of absent plaintiffs because the Kansas class action statute contained an opt-out provision.